Ellsworth, J.
The title of the plaintiff to the property in question, is as assignee of Isaac G. Ford, who failed and assigned his property on the 25th day of February, 1857. It is not denied that the defendants, one of whom is the attaching creditor of said Ford, and the other the officer who served the writ and took the property, have a good and legal defense, if the evidence offered by the defendants to prove the day when the property was attached is admissible in proof; and if, further, there be nothing in the character and position of the plaintiff, as assignee for creditors, to *242 exempt him from the consequences which would otherwise ensue.
We state the question in this form, because we have nothing to do with the sufficiency or effect of the evidence when admitted, for the superior court found it to be sufficient, and reserved only the question of its admissibility for our advice; and because receiving proof of the fact as to the time when the writ was served, is not exactly the same thing as receiving proof to contradict an official return, although the distinction will make little or no difference in this case; for, upon the evidence adduced, the court allowed the officer to come into court and amend his return according to the truth of the fact, and so it then appeared from the return itself, that the defendants’ attachment was on the 2d day of December, 1856, and not on the 2d day of January, 1857, as the return first stated. If the' law be, as has been claimed, that the day of the attachment can not be learned except from the return, and indeed that the existence of the attachment itself can not be proved except by it, then enough was done to satisfy even this rale, for the court have found the fact to be as claimed by the defendants, and have allowed the return to be amended so as to speak in conformity to the truth of the fact.
In Connecticut the law is settled, and has been ever since, and probably before, the cases of Watson v. Watson, 6 Conn., 336, and Wilkie v. Hall, 15 id., 36, that an officer’s return, whether on mesne or final process, is only prima facie evidence of the fact stated in it, and may be collaterally as well as directly inquired into and denied, which we suppose is contrary to the common law and to that of some of the adjoining states ; but we believe it is the law of our courts, and therefore, in this case, we see not why the defendants should not have been allowed to prove the time when the attachment was made, as the fact became all important to their defense.
Looking at the subject more generally, the questions stated are of no ordinary interest and importance, and well deserve careful examination. And, as to the first, it may be *243 laid down as a general principle of law, that mistakes are and ought to be amendable, provided the correction is asked for within a reasonable time and in proper manner. To err is incident to human affairs, and no jurisprudence is entitled to be reckoned just or wise, which does not admit the possibility of error, and provide such redress, when it is discovered, as is consistent and practicable. The most solemn transactions are not exempt from error; neither judgments, decrees, records, deeds, nor writings of any kind ; and this principle we fully admit whenever we allow these records and muniments of title to be corrected in equity and otherwise as we often do. The court in Massachusetts say, in Clark v. Lamb, 8 Pick., 418, “ In all proceedings mistakes will occur, notwithstanding all ordinary care; and when they do thus happen, they ought, if possible, to be corrected without injury to either party.”
Why now should the returns of executive and ministerial officers be considered an exception to the general rule ? Where these officers have failed to state the precise truth, as they are sworn to do, in their indorsements on process which they have served, why may and ought they not to be allowed afterwards to do it, both on their own account and to protect the rights of the parties to the process, if it can be done consistently with the rights of third persons ? We perceive no reason for an exception ; and in fact we well know there is no exception, not even in judicial proceedings. During the first term of the court, and all future terms while the case is pending in court, any judgment, decree, order, entry, or return of process is amendable, and, if an error has intervened, ought to be amended and made to speak the exact truth. Such is the uniform practice in all our courts we believe. Nor are the corrections, in all cases, of necessity or in practice, confined to a term of the court in which the case is pending. The rule is much broader.
We do not think it an open question in our courts, whether a sheriff may be allowed to amend his return. It was decided that he could do it in Wilkie v. Hall, (supra,) although, in that particular case, the amendment which had *244 been made in the county court was not approved by the higher court — not however for the want of power in the county court, but for other reasons. And such is now the undoubted law, both in England and in all the states of our republic. The cases are exceedingly numerous, especially in the reports of Massachusetts and New Hampshire, but we cite only a few of them. Whittier v. Varney, 10 N. Hamp., 300. Wendell v. Mugridge, 19 id., 109. Clark v. Lamb, 8 Pick., 415. Thatcher v. Miller, 13 Mass., 270. Tilden v. Johnson, 6 Cush., 357. Gibson v. Bailey, 9 N. Hamp., 168. Ohio Life Ins. & Trust Co. v. Urbana Ins. Co., 13 Ohio, 227. Pratt v. Wheeler, 6 Gray, 520.
To the exercise of this power there are undoubtedly limits beyond which it can not be properly allowed; one is, (though it is one affecting the officer rather than the court) that an officer may not, without leave of court, alter his indorsement of service after the process has once been returned to the court, for the process is then out of his hands, and has become a part of the files of the court. Beyond this, amendments of this class would seem to be very much within the sound discretion of the court, to be allowed or not according to the circumstances of the case. Certainly, license should be given only where the amendment is in furtherance of justice, and can be made understandingly and discreetly, and the mistake is most clear and palpable. As to the time for such correction, it may be made while the court to which the process is returned is in cession, or after-wards, when the mistake is discovered, if the court will give its permission ; for the power is the same in both cases. Nor is it indispensable that the officer be still in office, though this circumstance is treated as material in some of the reported cases; but in none of them is it laid down to be indispensable, while in some it is said not to be, and we confess we do not see why it should be, as the amendment will be allowed only in the discretion of the court, and will be made, whenever it is made, under the sanctions and penalties of the law. Gibson v. Bailey, 9 N. Hamp., 169. Adams v. Robinson, 1 Pick., 461. Thatcher v. Miller, 11 *245 Mass., 413. Welles v. Battelle, id., 477. In the last case the court remark (page 481) that though the sheriff is out of office, he will act under the penalties of the law in amending the return.
These are the reasons which bring us to the conclusion that the evidence offered below was correctly received, and the amendment of the officer’s return properly allowed ; unless indeed, the plaintiff, being assignee for the benefit of the creditors of I. 6. Ford, stands on different ground from Ford himself; which is the second question to be considered.
In the English courts no such distinction would be admitted or countenanced for a moment. The courts there have always held that the assignee of a bankrupt takes the estate of the bankrupt, as the bankrupt himself held it, subject to all the existing equities, not because of any peculiar provision in their bankrupt law, but because of the obvious and natural justice- of the thing itself. They hold that the assignee is a mere instrument of the law to receive and settle the estate of the bankrupt, a kind of net to gather in and keep whatever of his estate is left, and divide it proportionally among the creditors — that he is not a bona fide purchaser, one who has without knowledge advanced his money upon the faith of a clear and perfect title in the vendor, but rather a volunteer, taking what the bankrupt has to assign, neither more nor less. We need not cite cases to these points, for they abound in all the books and elementary treatises in our libraries, and may be found brought together in 2 Story Eq. Jur., §§ 1228, 1229, and commented upon in the case of Mitchel v. Winslow, 2 Story R., 638.
Why is not the English doctrine applicable herb ? What is there in the nature of a general assignment to vary the equities between the parties ? If the bankrupt had fraudulently conveyed away his property before he failed and assigned, that conveyance of course created no equity in favor of the fraudulent grantee, and is by statute made positively and absolutely void as to creditors, so lhat the property yet remains the proper estate of the bankrupt, and the assignee, acting in their behalf, must inventory it and treat it *246 as a portion of the assets. So our court held in Swift v. Thompson, 9 Conn., 63, in Andrus v. Doolittle, 11 id., 286, in Minor v. Mead, 3 id., 289, and in Booth v. Patrick, 8 id., 106. In the last two cases it was held to be the duty of the executor or administrator of a fraudulent grantor, to inventory the property fraudulently conveyed away. And although, in Swift v. Thompson, the learned judge who gave the opinion of the court does, in his remarks, compare an assignee in insolvency with a bona fide purchaser, it is an illustration which the case did not call for, and which, as a principle of law, I must think is open to great doubt, as is shown by Williams, J., in his dissenting opinion. Suppose I purchase a farm of my neighbor, and pay him for it $5,000. Through mistake one of the witnesses to the deed was really incompetent as a witness, and my deed is therefore, as a conveyance of legal title, inoperative. The vendor fails and assigns all his estate. The assignee takes the legal title of the farm, but does he take the equitable ? Have not I an equity, a lien on the farm, a claim altogether higher than that of the assignee ? Or will he hold the farm, and force me to come in as a general creditor and take my pro rata share ? The farm in equity and truth is my own, and I could have got a new deed of it from my grantor. Why may I not hold it against one who occupies his place for the single purpose of settling his estate ?
This question has often been before the courts of this country, and, so far as I can learn from the books, they have uniformly followed the English decisions. Judge Story (in 2 Eq. Jur., § 1229,) says: “But there is a clear distinction between the case of such a general assignment for the benefit of creditors generally, and a particular assignment to specified creditors for their particular security or satisfaction. The former are deemed to take as mere volunteers, and not as purchasers for a valuable consideration, strictly so called. The latter, if a conveyance of the property has been actually-made, and they have no notice of the purchase money being unpaid to the vendor, are deemed entitled to the same equities as any other bona fide particular purchaser.”
*247 The same is held by Chancellor Walworth in The matter of Howe, 1 Paige, 128. He there says, “ It is a well settled rule of equity that the general assignee of a bankrupt takes his estate subject to every equitable claim which exists against it by third persons, and that the assignee can not avail himself of the legal estate thus acquired to defeat a prior equity of which he had no notice at the time of the assignment. He differs in this respect from a bona fide purchaser of the legal estate, and from mortgagees who have advanced their money on the credit of the land, and who are considered quasi bona fide purchasers. I can see no good reason why a different rule should be applied to general assignees for the benefit of all the creditors, created by the voluntary act of the debtor, from that which prevails in respect to those created by operation of law. Neither can be considered bona fide purchasers who are protected because their legal estate is united to an equitable one.” He cites numerous authorities in support of this position, to which we need not particularly refer. The same doctrine is held in Mitchell v. Winslow, 2 Story R., 636, and in Pratt v. Wheeler, 6 Gray, 520, and is impliedly admitted in Bailey v. Greenleaf 7 How., 56. See also Warren v. Fenn, 28 Barb., 334; Dows v. Dennistown, id., 400; Watson v. Wells, 5 Conn., 472.
Upon the whole, we are satisfied that the plaintiff, as assignee of Ford, takes the estate assigned subject to the defendants’ equity, and not as a bona fide purchaser for a valuable consideration ; and therefore, as the officer's return could have been amended as against Ford himself, it can now be amended as against the present plaintiff, as the court below was fully satisfied of the existence of the mistake which was the ground of the application.
We think the evidence was admissible, and that judgment should be rendered for the defendants.
In this opinion the other judges concurred.
Officer’s return to be amended.
Judgment to be rendered for defendants.