ZIBA H. KITCHEN, Respondent, *v.* FREDERICK REINSKY and
JAMES BROWN, JR., Appellants.

1. *Practice — Trial — Affidavit — Admissions — Subsequent Trial.*— Plaintiff
claimed certain property as purchaser at assignee's sale, and at the trial
defendant obtained a continuance upon affidavit that testimony had been dis-
covered, too late to be used in the trial, to prove that "one of the assignors"
"was insolvent at the time he made the assignment, and that he made the
same to hinder and delay creditors, and that the same is void;" but plaintiff
elected to go into trial, and admitted the facts stated in the affidavit, and the
case proceeded : *Held,* that at a subsequent trial of the same cause, such for-
mer admission of counsel could not be used in evidence, and the action of the
court in excluding it operated no surprise to defendant, and constituted no
ground for new trial. Plaintiff at most simply admitted that the statements
of the affidavit were to be regarded as proved for the purposes of the previous
trial. The admission was not in any sense one of record, and stood upon the
same ground precisely as if the absent witness had himself been present and
testified to the facts stated in the affidavit; and the fact that the admission
was preserved in a bill of exceptions does not alter the case.

2. *Practice—Attachment—Sheriff's Return—Amendment, when permitted.*—
Under the laws of this State, an amendment of a sheriff's return upon a writ
of attachment may be allowed after judgment and without notice, and it will
not be questioned in the absence of anything tending to show an improper
exercise of the discretion of the court; and the effect of such amendment
will be to give the party holding by virtue of the attachment the benefit of a
regular and valid service of the writ at the time of the original levy, and to
make the title which passed by the conveyance of the property under the
attachment sale relate back to that sale.

3. *Partnership—Assignment—Attachment Creditors.*— A partner cannot pro-
vide for individual debts due by his copartners, or by a mere stranger without
any interest either in the property of the partnership or of either member of
the firm, in a conveyance covering his entire property, to the exclusion of his
*bona fide* creditors. As to the attaching creditors, such conveyance must be
held to be utterly fraudulent and void.

*Appeal from St. Louis Circuit Court.*

Defendant at the trial asked the following instructions which
were refused by the court : "1. The assignment of Cochran &
Pollack to Stewart and Fiske was inoperative to pass any title to
the land in question. 2. The deed of Stewart and Fiske, acting
as assignees of John Cochran in New York, to the plaintiff, was
inoperative to pass any title to the land in question. 4. The

admission made by plaintiff's attorney at a former trial of this cause, and made of record, that 'Cochran was insolvent when he made the assignment,' then and now offered in evidence, and 'that the same was made to hinder and delay creditors,' and 'that it was void,' and 'plaintiff's claim under said assignment was void,' is conclusive against the plaintiff, and he is estopped from claiming any title under said assignment."

The third instruction asked by defendant was given by the court, as follows: "3. Defendants' title relates back to the 2d of March, 1860, to the date of the attachment and levy at the suit of Robinson & Parsons against Cochran, and the conveyance of Cochran to plaintiff, dated September 1st, 1860, was inoperative to pass any title to the land in question as against the purchasers under the attachment sale."

*John. P. Hudgens*, for appellants.

The first and second instructions asked by defendant and refused by the court comprehend the entire issue involved in the case, and are in brief—1. Did the foreign voluntary assignment of Cochran & Pollack, made in the State of New York, without any compliance with the *lex loci rei sitæ*, pass title to the assignees, Stewart and Fiske, to land in Missouri, belonging to John Cochran? 2. If the first proposition be affirmed, then did the deed of the assignees, Stewart and Fiske, made in New York, "under and by virtue of the assignment," and as such assignees, to the plaintiff, without any pretense of compliance with the *lex loci rei sitæ*, which requires the filing of an inventory and bond in the St. Louis Circuit Court, and procuring an order of the same as a prerequisite to their right to sell and convey realty under the assignment, pass any title to plaintiff?

I. There are two classes of assignments known in law: 1. Statutory or bankrupt assignments. 2. Voluntary assignments. Both are for the benefit of creditors, and governed by the same rules as it respects real estate. The latter is a substitute for the former. (Bur. on Assign. 5, 16; 2 Kent's Com. 532; 1 Sm. & M. 207, 258; 27 Mo. 528; Story Confl. Laws, § 423 a.)

II. The *lex loci rei sitæ* governs all contracts for or conveyances of real estate, and unless such are made in conformity and compliance with the *lex loci rei sitæ* they are invalid. (Story Confl. Laws, §§ 435, 427, 428, 555, 363, 364; United States v. Crosby, 7 Cranch, 115; 10 Wheat. 192; 9 *id.* 566; 11 *id.* 465; 11 Mo. 318; Bur. on Ass. 360–2.)

III. The assignment of Cochran & Pollack is a "voluntary assignment," within the meaning of "an act concerning voluntary assignments" in force in the State of Missouri at the time said assignment was executed, and as such must conform to all the provisions of said act as the *lex loci rei sitæ* governing in this case: 1. Because it purports on its face to be an assignment for the benefit of creditors to Stewart and Fiske "as assignees." 2. The assignees accept the trust "as assignees" and "agree in all respects to conform to the provisions thereof under the law." 3. It provides for the payment of six classes of preferred creditors with the residue to be returned to John Cochran. 4. The assignees, by their deed to plaintiff, declare that they make it as assignees under the assignment, and by virtue of authority under the assignment. (Manny v. Logan, 27 Mo. 528; 45 Barb. 317; 10 Paige, 461, 445–8; 7 Gill. & Johns. 480; 40 Penn. St. 269; 20 Ohio, 389, 400; 31 Mo. 301.)

IV. As a foreign voluntary assignment it was inoperative to pass title to land in Missouri, and the first instructions asked by defendants and refused by the court should have been given with a verdict for defendants. (Bur. on Ass. 360–2; Story's Confl. Laws, §§ 423 *a*, 428, 435; 3 McLean, 399; 18 Pick. 245–7; 10 Wheat. 202; 2 Ohio, 488; 11 Mo. 314–18; 7 Gill. & Johns. 480; 10 Iowa, 282; 6 Mo. 302.)

V. The second instruction asked by defendants and refused by the court should have been given. The deed of the assignees to plaintiff, made in New York, under proceedings in New York, without compliance with the provisions of the "act concerning voluntary assignments" in Missouri, as the *lex loci rei sitæ*, was inoperative and void: 1. Because the assignees took no title, by virtue of the assignment, to the land in question, and had no title to convey to plaintiff. 2. Because the assignees do not pre-

28—VOL. XLII.

tend to have filed an inventory and given bond to the Circuit Court of St. Louis county, nor procured an order from this Circuit Court for the sale, as an indispensable prerequisite to their right to sell or convey the premises in dispute; and such compliance with the *lex loci rei sitæ* must appear affirmatively, or no title can pass. (Manny *et al.* v. Logan, 27 Mo. 528, above referred to; Cleveland v. Boerum *et al.*, 27 Barb. 252; Story's Confl. Laws, §§ 435, 364–5, 424–7; 1 Pick. 81; 1 Paige, 220; 11 Am. Jur. 403; 1 Green, New Jer., 326; 16 Abb. Pr. 23—case in point.)

VI. The assignment is void by the statute of frauds both of New York and Missouri, because it creates a trust to the use of one of the assignors, John Cochran, without providing for the payment of all his debts. (R. C. 1855, p. 802, § 1; Rev. Stat., N. Y., 219–20, § 1; Bur. on Ass. 179, 430; 6 Hill, 438; 26 Mo. 423; 5 Cow. 584; 4 Comst. 211; 13 Wend. 243; Robinson v. Robards, 15 Mo. 459; Brooks v. Wimer, 20 *id.* 503.)

VII. The assignment is void because it appropriates the individual property of John Cochran to pay the individual preferred creditors of Pollack, and also of Abbott, to the exclusion of Cochran's individual judgment creditors. The property conveyed is described as follows: "All the real estate and personal property, of whatever description and wherever situate, etc., belonging to the said John Cochran and Robert G. Pollack, or either of them, or in and to which the said John Cochran and Robert G. Pollack, or either of them, have any interest, title, claim, or demand whatever, to have and to hold the same in trust, etc. * * Third, to pay off all the debts due and owing by the said firm of Cochran & Pollack, or the late firm of Abbott, Cochran & Pollack, or either of the members of said firms, to Cornelius Fiske." Abbott is not one of the assignors, and no reason appears why his individual debts to Fiske or the other preferred creditors, without limit as to amount, should be paid out of Cochran's individual property to the exclusion of Cochran's creditors; and the provision is a fraud on Robinson & Parsons, under whom defendants claim as judgment creditor of Cochran. In Smith & Peters v. Howard *et al.* (20 How. Pr. 121), the court

says: "This fifth clause authorizes and directs both the share of one of the assignors in the joint property and also his individual property, without regard to its value or to the amount of his individual debts, and without regard to the value of the property or to the amount of the individual debts of his co-assignor, to be applied to the payment of the debts of his co-assignor, for which neither he nor his property was liable at law or in equity, equally with his own just debts. It, in short, authorizes the property of an insolvent debtor to be applied in part to the payment of the debts of another person, and for which neither he nor his property is in any wise bound before his own just debts are satisfied. Such a provision, in an instrument like the one under consideration, affords a conclusive presumption of a fraudulent intent on the part of the assignors." But the case before the court is still stronger. Cochran not only assigns his individual property to pay the individual debts of his co-assignor, Pollack, without limit or amount, but to pay the individual debts of Abbott, who makes no assignment, and the amount of whose individual debts is unknown, and that to the exclusion of Cochran's own individual judgment creditors. (1 Sandf. Ch. 348; 16 N. Y. 484; 24 *id.* 509; 3 Paige, 167, 517; 6 *id.* 19; 7 *id.* 26; 1 Story's Eq. Jur. 625.)

VIII. The assignment is void because it authorizes the assignees to compromise and compound all debts and claims due either member of the firms, or due by the firm, or either member of either firm, to themselves, the assignees, as preferred creditors— thereby placing it in their power to appropriate the whole assets, on real or fraudulent debts, of Abbott to either of said assignees. (9 Barb. 255; 4 Paige, 41; 11 Wend. 187, 203, 208.)

IX. The assignment is void because so admitted by plaintiff, and the court erred in excluding the admissions made of record. (1 Greenl. Ev. § 207; 3 Hill, 215; 1 Mees & W. 508; 42 Barb. 18; 5 Denio, 308; 6 Hill, 534; 8 Wend. 480.)

X. The third instruction asked by defendants and given by the court was correct. Defendants' title does relate back to the date of the attachment, March 2, 1860. This is five days subsequent to the recording of the assignment in the recorder's office

of St. Louis county, and six months prior to the deed of assignees under the assignment to plaintiff, and to deed of Cochran to plaintiff, made at the same time, leaving the decision of the court pending on the validity of the assignment alone. (23 Mo. 85, 92, 94, 115; 17 Pick. 106.)

XI. The sheriff's return was sufficient—*Id certum est quod certum reddi potest.* (Drake on Att. § 237, and authorities cited; 11 Pick. 341; 5 Me. 453; 2 N. H. 137; 9 Pick. 308; 33 Me. 141; 7 Johns. 217.)

XII. The proceedings in attachment and the judgment of the Common Pleas Court, under which defendants purchased, cannot be called in question in this collateral proceeding. (12 Mo. 514, 520, 238; 17 *id.* 71; 8 *id.* 264; 33 *id.* 28; 5 *id.* 235; 10 Pet. 472; 6 Gray, 520.)

XIII. The statute of *jeofails* cured all defects in the sheriff's return — the foundation of the special judgment of the Common Pleas Court. Rev. Code, 1855, p. 1255, § 19, provides: " When a verdict shall have been rendered in any cause, the judgment therein shall not be stayed, nor shall the judgment *upon such* verdict, or any judgment upon confession, *nihil dicit*, or upon failure to answer, nor any judgment upon a writ of inquiry of damages executed thereon, be reversed, impaired, or in any way affected by reason of the following imperfections, omissions, defects, matters, or things, or any of them, in the pleading process, proceedings, or record, namely, etc. * * * Third, for any imperfect or insufficient return of any sheriff or other officer, or that the name of such officer is not set to any return actually made by him, etc." The statute of 1845 did not cure such defects in cases of defaults; but the statute of 1835 did cure such defects, and the statute of 1855 is like that of 1835. (11 Mo. 359.)

XIV. The amendment to the sheriff's return, *nunc pro tunc*, was properly allowed by the court, and cannot be impeached in this collateral proceeding. (R. C. 1855, p. 1257, §§ 20, 21; p. 1466, § 11; p. 749, § 62.) In 19 Mo. 157, it was held that an amendment made by a sheriff, long after his term of office had expired, was proper. In 19 Mo. 408, the sheriff amended his return by inserting a proper description of land sold by him, and name

of purchaser, five years after his term of office had expired. In 4 Ohio, 45, an amendment was allowed after fifteen years, by the administrator of an ex-sheriff, deceased. In 5 Johns. 356, an ex-sheriff was attached twelve years after his term of office had expired, and compelled to amend his return. (2 Sandf. Ch. 163.) A new return was permitted, *nunc pro tunc*, in Supreme Court. Deputy is still in office, as to process commenced by him before his principal's term expired. (6 Wend. 224; 20 *id.* 602; 3 Cow. 89, 95; 9 *id.* 203; Allen on Sh. 78, 202; Gwyne on Sh. 471; Crocker on Sh. § 40; 3 Monroe, 295; 6 Gray, 520; 14 Me. 263; 4 Hill, 71; 14 Pick. 31; 17 *id.* 106.)

XV. Although the judgment and proceedings may·have been irregular and set aside, yet the title of defendant acquired under sale by sheriff cannot be impaired by any misfeasance or omission of the sheriff. He is an innocent purchaser, and if the wrongful act of the sheriff injures any party, his bondsmen are liable. (8 Wend. 9; 2 E. D. Smith, 474; 15 N. Y. 617; 3 Scam., Ill., 104; 1 McLean, 221; 12 Abb. Pr. 473; Gwyne on Sh. 351; 8 Mo. 264; 12 *id.* 514, 238; 10 Pet. 472.)

*Krum, Decker & Krum*, for respondent.

I. The assignment of all their real and personal property, wherever situated, by Cochran & Pollack, was a valid assignment. It was not void for uncertainty of description. The objection that there is no particular description of the lands granted cannot be maintained. The debtor gives, grants, sells, and conveys to the trustee all his lands, tenements, and hereditaments. The intention of the parties, therefore, that all the real estate should pass is manifest, and a particular description of the lands conveyed is not required. (Pingree v. Comstock, 18 Pick. 46.) Where a debtor assigned all of his estate, real, personal, and mixed, assignment held not invalid from uncertainty of description. It was a sufficient description of the property to give precise information of the nature and extent by reference and inquiry. (1 Sm. & M. 273–4.) A general assignment of all a man's property is not fraudulent *per se*. (Brashear v. West *et al.*, 7 Pet. 614.)

The assignment, although made in New York, yet passed the

property in question as against the defendants. 1. They were not creditors resident in Missouri. (Brown v. Knox *et al.*, 6 Mo. 306 ; Bur. on Ass. 370–1.) The question of comity, therefore, which courts often rule in favor of parties resident within the jurisdiction of the forum, does not arise in this case, and the authorities cited do not apply. 2. The assignees complied with the local laws of Missouri. 3. The defendants do not stand in the relation of creditors. (Jones *et al.* v. Lake, 2 Wis. 210 ; Norton v. Kearney *et al.*, 10 Wis. 443 ; Bur. on Ass. 597.) The rule of comity in regard to assignments is limited in its terms to citizens of the State where the provisions of the assignment are sought to be enforced. As against citizens of other States, and especially as against citizens of the State where the assignment was made, the rule apears to uphold, without qualification, that an assignment valid by the laws of the State in which it is made is valid everywhere. (Whipple v. Thayer, 16 Pick. 25 ; Bullock v. Taylor, 16 Pick. 335 ; Daniels v. Willard, *id*. 36 ; 5 Mas. 174 ; Richardson v. Leavitt, 1 La. An. 430 ; Atwood v. Protection Ins. Co., 14 Cow. 555 ; Sanderson v. Bradford, 10 N. H. 260 ; U. S. v. Bank of U. S., 8 Robinson 262 ; 4 Zabriske, 162 ; Blake v. Williams, 6 Pick. 286, explanatory of Ingraham v. Geyer, 13 Mass. 146 ; Bur. on Ass. 369.) This levy is too vague and uncertain, and is not in conformity with the statute. (R. C. 1855, p. 244, § 22.)

II. The attempt to amend the sheriff's return in 1866 (six years after the plaintiff's rights had accrued, and five years after a sheriff's term of office had expired) was wholly abortive. The amendment does not assist the defendants' case, and cannot be made to operate to defeat the plaintiff's title. The plaintiff is shown to be a *bona fide* purchaser for value, without notice of the attachment sued out by Robinson & Parsons. The amendment indorsed on the attachment was not made by the late sheriff, nor by any one duly authorized to make it.

FAGG, Judge, delivered the opinion of the court.

The subject matter of controversy in the suit between these parties is certain real estate in the city of St. Louis, to which the

plaintiff below claimed title as purchaser at a sale made by the assignees of Cochran & Pollack, and also by deed from Cochran himself.*   The defendants set up a title to the property under proceedings in attachment commenced subsequent to the execution and recording of the deed of assignment.   The deed was executed and acknowledged before a proper officer, and in due form, in the city of New York, on the 18th day of February, 1860, and filed for record in the office of the recorder of land titles for St. Louis county, on the 25th day of the same month.   The attaching creditors of Cochran, being also residents of the city and State of New York, instituted their suit in St. Louis on the 2d day of March following, upon a judgment obtained in that State.   This suit was prosecuted to a judgment and sale of the property, upon which rests the title set up by defendants.

It appears from the bill of exceptions that there were two trials of this cause in the St. Louis Circuit Court.   Although there is some confusion upon this point, sufficient appears to show that at the time of the first trial an application was made by the defendants for a continuance.   The chief ground stated in the affidavit was that testimony had been discovered too late to be used in the trial to prove that " Cochran, one of the assignors under whom plaintiff claims title, was insolvent at the time he made the assignment, and that he made the same to hinder and delay creditors, and that the same is void."   It is further stated in the bill of exceptions that, the application being held sufficient by the court, "the plaintiff elected to go into trial, and admitted the facts stated in the affidavit."   At the second trial the defendants offered this admission in evidence, and it was excluded by the court.   It was claimed, in the motion for a new trial, that the ruling of the court upon this point operated as a surprise to the parties, and they now insist that it was erroneous and constitutes good ground for a reversal of the judgment.   It is plain that the statement of the counsel was not intended to go to the extent of admitting unconditionally the truth of the assertion made by the affiant in reference to the fraudulent intent of the party executing the deed.

* The deeds were dated September 1, 1860.

At most, it simply admitted the fact that the statements of the affidavit in reference to that matter were to be regarded as proved for the purposes of that trial. Any other construction would place the plaintiff in the attitude of having admitted away the chief part of the grounds upon which he evidently rested his right to recover. It was not in any sense an admission of record, and stood upon the same ground precisely as if the absent witness had himself been present and testified to the facts stated in the affidavit. The fact that the admission was preserved by a bill of exceptions does not alter the case at all. The testimony of the witness himself, if preserved in the same manner, could not have been read at the second trial. It was therefore not a surprise in a matter of fact, and constituted no ground for new trial. As no diligence was shown on the part of the defendants to procure the testimony of the witness, and there was no ground upon which the admission of plaintiff's counsel could be introduced in evidence, this point must be decided against the appellants.

That all the minor questions in the case may be first disposed of, we proceed to consider next the amendment of the sheriff's return to the writ of attachment. It contained no description of the property levied upon, but referred to another writ of prior date for the same, and was in other respects informal. This writ was issued and served on the 2d day of March, 1860, and by permission of the court was amended on the 20th day of March, 1866, long after the institution of this suit. The discretion of the Circuit Court as to matters of this kind is very large under the laws of this State. Although an amendment of the process should be allowed after judgment, and without notice, still it will not be questioned in the absence of anything tending to show an improper exercise of such discretion.

The effect of the amendment in this case was to give the defendants the benefit of a regular and valid service of the writ on the 2d day of March, 1860, and to make the title which passed by the conveyance of the property under the attachment sale relate back to that sale. The deed of Cochran to the plaintiff bears date September 1, 1860. The lien, therefore, which was acquired by the levy of the attachment was prior in point of time, and must

hold as against any subsequent conveyance of the property by Cochran himself. The court below committed no error in declaring that this conveyance was inoperative to pass any title to the land in question as against the purchaser under the attachment sale.

The plaintiff's whole case, then, must stand exclusively upon the validity of the assignment. The conveyance made by the assignees of Cochran & Pollack to the plaintiff was also executed on the 1st day of September, 1860. On the trial the court refused an instruction asked by the defendants declaring this deed as well as the assignment inoperative to pass any title to the plaintiff. They seem to have been executed, acknowledged, and recorded substantially in conformity with the requirements of the statutes of this State regulating the conveyance of real estate, and therefore present no difficulties on that score. The sole question remains as to whether the deed of assignment was fraudulent and void as to the attaching creditors of John Cochran. It purports upon its face to be a conveyance of all the property, real and personal, belonging to the firm, as well as to each of the members thereof, wherever situate, to the assignees named, in trust, for the uses and purposes declared. After providing for the payment of the costs and expenses of executing the trust, and the payment of wages due and owing to persons employed in their store in the city of New York, they direct the assignee "to pay off all the debts due and owing by the said firm of Cochran & Pollack, or the late firm of Abbott, Cochran & Pollack, or either of the members of said firms, to Cornelius Fiske." Directions were then given for the payment of certain specified creditors of both the firms mentioned, and lastly, "the surplus, if any, after the said debts and liabilities shall be paid in full, to restore and pay over to the said John Cochran, his heirs," etc.

The parties to be affected by the assignment were all citizens of the State of New York. Hence it is admitted that as to them, in the enforcement of its provisions in this State, the rule would hold without qualification, that if it is valid by the laws of the State of New York, it is so to be regarded here; so that if the question of its validity were to be decided without reference to

any rights or liens acquired under the laws of this State by any of the parties thus interested, we should look no further than the laws and adjudications of the courts of that State upon the subject. (Bur. on Ass. 370.) The claim of the defendants in the court below rests upon a lien acquired by a regular proceeding under the laws of this State. The parties acquiring that lien were judgment creditors of John Cochran, and had a right to inquire into the validity of any transfer of his individual property. The defendants claiming under them are therefore clearly in a position to attack the *bona fides* of the assignment. It can make no difference whether this question is to be settled by the laws of this State or the laws of New York. It is apparent from the face of the deed that the individual property of Cochran was appropriated to the payment not alone of the debts of the firm, but the debts of his co-partner, Pollack, and also of Abbott. He was in no sense liable for the individual debts of these parties. It was a voluntary undertaking upon his part to pay the debts of other parties, and the appropriation of his own property to that purpose, to the manifest injury of his individual creditors. A conveyance or assignment by a debtor, especially of the whole or a greater part of his property, should not be employed as a means of preserving it for his own use or benefit, or of unduly protecting it from the remedies of his creditors.

It may be conceded for all the purposes of this case that the individual property of Cochran could be appropriated to the payment of the partnership creditors, to the exclusion of his personal creditors. He was individually liable for all the partnership debts, and the question of preference as between the two classes of creditors need not be considered.

The real matter of inquiry is, whether the individual debts due by his co-partner, or Abbott, a mere stranger, and without an interest either in the property of the partnership or either member of the firm, can be provided for in a conveyance covering his entire property, to the exclusion of his *bona fide* creditors. Such a conveyance cannot be upheld. As to the attaching creditors, it must be held as utterly fraudulent and void, and passed no title to the property in question.

The other provisions of the assignment need not be considered. The judgment of the Circuit Court will therefore be reversed and the cause remanded. The other judges concur.