JOHN S. FOREMAN, *et al.*, V. JOSEPH J. CARTER, *et al.*

1. VOID JUDGMENTS — *Vacating and Setting Aside.* A void judgment may be vacated and set aside at any time, on motion of the defendant, and this though the judgment had been rendered more than three years before the code of 1868 took effect.

2. ———— *Voluntary absence; Confederate Service.* Where one, after the commencement of the late war, voluntarily left his place of residence within the Union lines, and entered the Confederate lines, and joined the Confederate army, he cannot avoid proceedings regularly prosecuted against him as an absentee, on the ground of his inability to return or to hold communication with the place where the proceedings were had.

3. AMENDMENTS — *In Furtherance of Justice.* Where a party has obtained, through legal proceedings, an unjust advantage, and in these proceedings has made a mistake, be it ever so trivial, the law will not tolerate an amendment to secure him in his advantage. But when it is in furtherance of justice, the law looks tolerantly on mistakes, and seeks to uphold whatever is honestly attempted to be done.

4. JURISDICTION — SERVICE — PUBLICATION; *Proof; Evidence.* Where a defendant has not been regularly served by summons, or publication of notice, the record cannot be amended after judgment so as to bring him into court and sustain the judgment. But where a defendant has been regularly served, and there is simply a defect in the return of the officer, or the proof of publication, that defect can be cured by amendment, so as to conform to the facts.

*Error from Atchison District Court.*

IN 1859 John T. Scott owned a half-section of land which he mortgaged to *Foreman.* Afterward, and in the same year, Scott sold and conveyed by deed one quarter-section of said land to *Joseph J. Carter,* the mortgage thereon not being paid or discharged. In July 1862 *Foreman* brought his action to foreclose said mortgage, making said Scott, and *Carter,* and one George R. Jacobs, defendants, as nonresidents and absentees from the state, and obtained constructive service upon all of them by publication. Judgment of foreclosure and sale was rendered, and the premises sold, the *Carter* quarter being purchased by *Morgan Osborn,* for $495. The sale was confirmed on the 6th of March 1863. On the 17th of February, 1871, *Carter* appeared and moved to vacate and set aside said

judgment of foreclosure, and the sale thereunder, claiming that the judgment was void. The objections made to the judgment, and the proceedings taken under said motion, are stated in the opinion. Said motion was heard at the June Term 1871. *Foreman* asked leave to amend the record in the foreclosure judgment, which application was refused by the district court, and *Carter's* motion was sustained, the foreclosure judgment and sale adjudged void, and set aside. *Foreman* and *Osborn* excepted, and bring the record here by petition in error for review.

*Otis & Glick*, for plaintiffs in error:

1. The district court erred in sustaining Carter's motion. The proper affidavit was filed, and due notice given, and proper proof of such publication made, as is shown by the record; and judgment was regularly taken in the action against Scott for the sum due on the note, and an order for the sale of the real estate mortgaged to secure the same, and said real estate was regularly sold, and a deed made to purchaser after the due confirmation; and said sale was confirmed eight years before Carter appears, and during all this time Osborn has been in possession under his sheriff's deed.

The judgment was valid and regular, and therefore the right to make the motion has lapsed. The time in which to make the motion is limited by law to three years, or less. Code of 1868, § 575; code of 1862, § 553. The right to make this motion then was absolutely barred by laws under which the judgment was rendered. On the lapse of time given by § 553, code of 1862, there was no authority existing by law for the court to hear or entertain this motion. Then only the question of jurisdiction of the court to render it could be made. 5 Pet., 470; 18 Pick., 532. After a court has obtained jurisdiction of a cause, no irregularity in the proceedings will affect the validity of the judgment, nor can any irregularity be inquired into after the time limited by statute. 5 Kas., 525; 5 Ohio St., 270; 10 Wall., 308; 12 How., 371.

2. One objection urged against the judgment is, that the

affidavit of the printer who published the notice was made then before A. G. Otis, who was one of the attorneys of record. But this is only an irregularity, and one that cannot affect the validity of the proceeding, as it is an act that does not affect the jurisdiction of the court. The objection to be good at all should be made before the judgment is rendered. 9 How. Pr. Rep., 64; 2 Paige Ch., 327; 6 Conn., 587.

3. Carter joined the rebel army in August 1862. He was within the U. S. lines when the suit was commenced, and after jurisdiction attached. He was not forced to go, nor was he in the lines of the rebellion, but went there voluntarily; and the case is not within the rule of *Dean v. Nelson*, 10 Wallace, 158.

4. The court erred in not allowing the plaintiffs in error to amend the record in case it held that the absence of the clerk's seal rendered the proceedings defective, and the affidavit irregular because sworn to before the attorney. If the court had the legal right to hear the motion of Carter, it had the authority to allow the clerk to attach the seal, and to allow Cochran to swear to the affidavit of publication before the clerk.

*Horton & Waggener*, for defendant in error:

1. The only pretended service had on Carter was by publication. The statute in such cases must be strictly followed. The compliance must be strict and literal, or the judgment will be void; and where the jurisdictional facts appear, as in this case, and are defective, the proceedings must be adjudged void, and no presumption can aid the defective record. 13 Wis., 569; 32 Barb., 604; 56 Penn. St., 176; 10 Mich., 260; 5 Minn., 367; 17 Ind., 367; 4 Pet., 466; 4 Monroe, (Ky.,) 541; 6 Wheat., 119; 10 Iowa, 304.

2. The affidavit or publication is deficient in not being authenticated with the official seal of the court. Comp. Laws, § 347; p. 180.

3. The affidavit or proof of publication was taken before the attorney of record of the plaintiff, and is therefore void,

and of no effect; §§ 347, 352, code of 1862; 4 Mon., 541; 12 Johns., 340; 3 Greene, 88.

4. The judgment of September 27th 1862 is void, as the court found upon the motion, that when said proceedings were commenced in said district court of Atchison county by Foreman, and at the date of the rendition of the judgment under said proceedings, and for a long time thereafter, the said Carter was within the confederate lines, and was prohibited from entering the Union lines. 10 Wall., 158, 367; 1 Dillon's Ct. Ct., 372; 5 Kas., 349; 24 Cal., 603.

5. On the hearing plaintiff asked leave to amend the record. The court refused to permit such amendments to be made; and as the allowance or disallowance of amendments is a matter in the discretion of the court, such action of the court is no ground of error; 23 Barb., 591; 16 Iowa, 97; 5 Kas., 155; 17 Ill., 474. Again, the court could not permit amendments to be made after judgment by default so as to confer jurisdiction. 6 Penn. St., 469; 6 Iowa, 337; 13 How. Pr. Rep., 45; 4 Monroe, (Ky.,) 544.

The opinion of the court was delivered by

BREWER, J.: On the 18th of July, 1862, Foreman brought suit in the district court of Atchison county to foreclose a mortgage given by Scott. He alleged that the other defendants claimed some interest, and asked that their interest be foreclosed. An affidavit for publication was filed, publication had, a decree rendered, and sale made. Morgan Osborn became the purchaser at the sale. The decree was rendered on the 27th of September 1862, and the sale made on the 6th of March 1863. On the 17th of February 1871 Joseph J. Carter, one of the defendants, filed his motion to set aside this decree, as void. The district court sustained the motion, and from that decision this proceeding in review is brought. Was this motion made in time? No matter what the merits of the motion, if the time within which it could be made was passed, he had no standing in court. By § 83 of the civil code of 1862 (Comp. Laws, p. 137,) a party against whom a

judgment has been rendered after service by publication was allowed three years in which to have it opened; and by §§ 546, and 553 of the same code a party also had three years in which to vacate or modify a judgment on account of irregularities in obtaining it. Sec. 575 of the code of 1868 (the section corresponding to § 553 of the code of 1862,) amends it by adding this clause: "A void judgment may be vacated at any time, on motion of a party, or any person affected thereby." It is claimed that the sole power the court had is derived from these statutory provisions; and as by the code of 1862 the time within which the power of the court could be invoked was limited to three years, and that time had elapsed after the entry of this decree and before the adoption of the code of 1868, that the decree had become a finality, beyond any power of interference. Conceding these provisions of the code to be in the nature of statutes of limitation, and the same rules apply. If a judgment is simply voidable, that is, may be avoided on account of certain irregularities in the manner of obtaining it, it starts the statute to running; and a party to avail himself of these irregularities must move within the time limited. But that which is absolutely void, never starts a statute of limitations to running. A tax deed, void on its face, is never saved by limitation laws. *Shoat v. Walker*, 6 Kas., 65. No more is a judgment absolutely void. If upon the face of the record it appears that the court had no jurisdiction of the subject-matter, or of the person, length of years will not give the jurisdiction, or make that good which was void. The addition of the clause of 1868 to the section, gives no additional power to the court. It simply enunciates a power it always possessed. In *Dederick's Adm'r v. Richley*, 19 Wend., 112, Bronson, J., says: "The judgment was signed on the 11th of November 1835; and no judgment in any court of record can be set aside for irregularity on motion unless the motion is made within one year after judgment; (2 N. Y. R. S., 359, § 2.) This provision relates to a mere technical irregularity, where the cause has been heard and decided on the merits. It cannot apply to a judgment en-

tered without authority against a party not before the court."
To the same effect are *Smith v. Rollins,* 25 Mo., 408; *Harris
v. Hardeman,* 14 How., 334; *Mills v. Dickson,* 6 Rich., 487;
*Hallett v. Righters,* 13 How. Pr. Rep., 43; *Manuf. and Mech.
Bank v. Boyd,* 3 Denio, 257; and also the unreported case
of *Leas and Harsh v. Ortman, Adm'r, &c.,* in this court on
error from Leavenworth county. If therefore the judgment
was void, Carter was in time with his motion, and the decision
of the district court should be affirmed.

Was the judgment void so far as Carter is concerned? It
is shown by the testimony offered on the motion that at the
time of the rendition of the judgment Carter was a soldier in
the confederate army, and within the confederate lines. It is
claimed that as war subsisted between the two sections of our
country, and as by the president's proclamation of August
16th, 1861, based upon the act of congress of July 13th,
1861, all intercourse and communication between them was
prohibited, no judicial proceedings could be had in the courts
of the one against parties within the limits of the other. The
notice of publication required the absent defendant to appear
and defend. The supreme power of the nation prohibited
him from appearing. Hence this prohibition suspended the
power of the court to proceed, until the defendant was able to
respond to the notice, and appear. The same conditions also
suspend the running of the statute of limitations. *"Contra
non valentem agere nulla currit prœscriptio."* There is some
conflict of authority on these points. That the war suspended
the running of the statute of limitations, is held in *Brown v.
Hiatt,* 1 Dillon Ct. Ct., 372; *Hanzer v. Abbott,* 6 Wallace,
532. That it does not, is decided in *Smith v. Stewart,* 21 La.
An., 67; *Taylor v. Hill,* 21 La. An., 626. That judicial pro-
ceedings are suspended, and an attempted foreclosure of an
equity of redemption, or seizure and sale, under attachment,
is void, is decided in *Dean v. Nelson,* 10 Wallace, 158. Contra,
in *Dorsey v. Dorsey,* 30 Ind., 522; *Mixer v. Sibley,* 53 Ill., 61.
It is unnecessary for us however to examine these conflicting
authorities; for, conceding the doctrine laid down by the

supreme court of the United States, as to the effect of the war, to be correct, we do not think the facts of this case will justify the conclusion sought.   The war began in April 1861.   At that time Carter was a resident of Kansas, and so continued until some time in July 1861, when he left, for aught that appears, voluntarily.   The next that we hear of him is in August 1862, when he joins a company of confederate soldiers in Tennessee.   Where he was from July 1861, to August 1862, we are nowhere told, though Carter is himself the main witness in his own behalf.   We cannot assume in his favor that he was driven out of Kansas, or that he went directly to some state then in rebellion, or that he was driven out of the Union, and within the confederate lines, or that he was drafted into service.   If any of these facts existed they should have been shown, by one seeking to avoid a judgment against him, and to disturb innocent parties in the possession of property they had paid for in good faith on the strength of such judgment.   It was well said by Bradley, J., in delivering the opinion of the court in *Ludlow v. Ramsey*, 11 Wall., 581, that "if a party voluntarily leave his country or his residence for the purpose of engaging in hostilities against the former, he cannot be permitted to complain of legal proceedings regularly prosecuted against him as an absentee on the ground of his inability to return or to hold communication with the place where the proceedings are conducted.   That would be carrying the privilege of *contra non valentem* to an unreasonable extent."   With that doctrine, thus announced by the supreme court of the United States, we cordially concur.   So far as the record before us shows, Carter voluntarily left his place of residence within the Union lines, after the war had commenced, voluntarily entered the confederate lines, and voluntarily joined their forces.   If force was used to compel any of these steps it should have been disclosed. *O'Neal v. Boone*, 53 Ill., 35.

The other objections to this judgment are, that the affidavits for publication, and of publication, are not properly authenticated.   The first is authenticated by the signature of the

clerk of the district court, but without his seal. The second is authenticated by the signature and seal of Alfred G. Otis, a notary public, but one of the attorneys of the plaintiff in this action. On the hearing of the motion to vacate and set aside this judgment plaintiff produced Abram Weaver, the clerk of the district court both at the time the affidavit for publication was made, and ever since, and offered to prove by him that as such clerk he had had the custody of the papers and the seal of said court, and that it was the universal practice in said court not to attach the seal to affidavits to papers filed in that court, and asked that he have leave to amend his authentication by attaching the seal. He also produced A. P. Cochran, whose name is signed to the affidavit of publication, and offered and asked to have him resworn to that affidavit, and to prove by him that publication was made as stated in that affidavit. Both of these applications were refused, and exceptions taken. Had the district court the power to permit these amendments? and if it had, ought it to have done so? Sec. 139 of the civil code provides that "The court may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading, process, or proceeding, by adding or striking out the name of any party, or correcting a mistake in the name of a party, or a mistake in any other respect, or by inserting other allegations material to the case, or conform the pleading or proceeding to the facts proved, when such amendment does not change substantially the claim or defense; and when any proceeding fails to conform in any respect to the provisions of this code, the court may permit the same to be made conformable thereto by amendment." It has been said that this language literally construed gives unlimited power to the courts. While not obnoxious to this sweeping charge, it cannot be denied that it grants a large discretion. That its language covers a case like the present, is too plain for controversy. If the proceedings for publication fail to conform to the provisions of the code the court may permit them to be made conformable thereto by amendment. One limitation on the exercise of

this power is, that it be "in furtherance of justice." Of this, in reference to this case, more hereafter. It is enough to state this here, as applicable generally: That if ever a party has obtained through legal proceedings an unjust advantage, and in those proceedings has made a mistake, be it ever so trivial, the law will not tolerate an amendment to secure him in his advantage. To such an one the law is a Procrustean bed, and to its exact requirements every proceeding must, at his peril, conform. But where only just claims are sought to be enforced, the law looks tolerantly on mistakes, and seeks to uphold whatever is honestly attempted to be done. Again, it is objected that "The court could not permit amendments to be made after judgment by default, so as to confer jurisdiction." Doubtless this is true. You cannot amend a party into court, after judgment by default, without summons, service or notice. You cannot amend by introducing summons and service. If in this case there had been no publication, there could be no amendment; for without publication an absent defendant cannot be brought into court. But here the objection is, not that something was omitted to be done which was necessary to be done to bring defendant into court, but that the "proof" of what *was done* is defective. The affidavit for publication was signed and sworn to before the proper officer, and now remains on the files of the court, attested by his signature. Publication was made, and a copy of the publication is on file. An affidavit and publication was signed and sworn to before an officer authorized generally to administer oaths, attested by his signature and seal, and is now on file. Publication of notice is equivalent to service of summons. When a summons is served the defendant is in court. So, when publication is completed. *Mason v. Messenger*, 17 Iowa, 261. The *affidavit* of publication is like the *return* on the summons, proof of what has in fact been done; and like such return, it does not of itself operate to bring the defendant into court—at least it did not, under the code of 1862, (though see code of 1868, p. 644, § 75, last clause.) In the one case jurisdiction is obtained by the *service;* in the other,

by the *publication*.  So that the amendments sought are not
to confer jurisdiction, but to perfect the proof of a jurisdic-
tion which had been really acquired.  We think therefore the
court had power to order these amendments made.  Ought
they to have been made?  Would it have been in furtherance
of justice?  That the debt was a just one, that it was secured
by a mortgage on the property sold, that the judgment is for
no more than it ought to have been, that defendant Carter
left the state without making any provision for the payment
of this debt, that he during the ten years of his absence made
no attempt to pay off the indebtedness, that the property was
fairly sold at a then reasonable price, that due notice of the
time and place of sale was given, are matters against which
the record makes no imputation.  In short, there is nothing
to qualify the assertion that the owner of the note and mort-
gage sought at a reasonable time, and in a reasonable way, to
secure satisfaction of his indebtedness out of the property
charged as security.  On the other hand, more than ten
years ago the defendant left the state without paying his
debts, and for as many years neglected the property, and now,
when values may have largely changed through the activity
and intelligence of the people of Atchison, returns and asks
to recover the land, dispossess the purchaser, and avoid the
proceedings, on account of some technical defect.  In such a
case we think simple justice requires that these amendments
be made.  It is further objected that the question of amend-
ments is one of discretion, and will not therefore be reviewed
in this court unless it appear that that discretion has been
abused.  This is unquestionably so.  Yet when the question
arises on a record we are generally placed in a better position
to weigh that discretion than when it is exercised during the
trial of a cause.  It seems to us, with the record all before
us, that these amendments should have been made.  See, as
to the power to amend, and the circumstances under which
amendments should be made, the following among many
cases: *Bilansky v. The State*, 3 Minn., 427; *Wiggin v. Veasey*,
43 N. H., 313; *State v. Dowd*, 43 N. H., 454; *Frink v. Frink*,

43 N. H., 508; *Avery v. Bowman*, 39 N. H., 393; *May v. Ferill*, 22 Texas, 340; *Keen v. Briggs*, 46 Maine, 467; *Palmer v. Thayer*, 28 Conn., 237; *Jackson v. Ohio & M. Rld.*, 15 Ind., 192; *Kitchen v. Reinskey*, 42 Mo., 427; *Dunn v. Rodgers*, 43 Ill., 260; *Clayton v. The State*, 24 Ark., 16; *Talcott v. Rosenburg*, 8 Abbott, N. S., 287.

The order of the district court will therefore be reversed and the case remanded with instructions to permit these amendments to be made, and when made to overrule the motion to set aside the judgment.

All the Justices concurring.