THOS. E. TUTT, *et al.,* v. P. S. FERGUSON, *et al.*

1. ENJOINING JUDGMENT; *Laches and Negligence of Judgment-Debtor.* Where a party prosecutes an action to perpetually enjoin the collection of a judgment previously rendered against him, on the ground that at the time of the rendition of said judgment he had a good defense to the action in which said judgment was rendered, of which defense he was at the time ignorant; and where neither the petition, the evidence, nor the findings of the court below in the action to enjoin said judgment, tend to show any diligence on the part of said party in ascertaining said defense so as to set it up in the action in which said judgment was rendered, but on the contrary where the record shows that said defense arose nearly four years before said judgment was rendered, and over six years before said

action to enjoin said judgment was commenced; and where all the circumstances of the case tend to show that said party should have known of said defense when said judgment was rendered, and that he was guilty of gross negligence in not knowing it, the action to perpetually enjoin the collection of said judgment cannot be maintained.

2. ———— A sheriff sold certain real estate on execution; afterward the sale was confirmed; afterward the sheriff refused to pay to certain persons their share of the proceeds of the sale; these persons then sued the sheriff and his sureties, and recovered a judgment against them for the amount due to said persons; afterward the sale was ordered to be set aside by the supreme court, on the ground of an apparent irregularity in the notice of sale; the notice was in fact regular, but it appeared to be irregular on account of a false return made by the sheriff; the said parties who óbtained said judgment were not parties to the proceeding in the supreme court; the question of whether the sale shall be set aside is now pending upon additional evidence in the district court. *Held*, In an action brought by the sheriff and his sureties and others to perpetually enjoin the collection of said judgment, that neither the said irregularity in said sheriff's return, nor the order of the supreme court concerning said sheriff's sale, nor both together, are sufficient to authorize the plaintiffs to maintain said action.

### Error from Wyandotte District Court.

INJUNCTION, brought by *Pembroke S. Ferguson, James A. Cruise, John E. Zeitz, Isaiah Walker, Moses M. Brodwell,* and *Allison B. Bartlett,* as plaintiffs, against *Thomas E. Tutt, Dent G. Tutt, John F. Baker, Wilkins F. Wheatley, Thomas F. Thatcher,* and *Edmund Terry,* as defendants, to enjoin the *Tutts* and *Baker* from collecting a judgment recovered by them against said *Ferguson* and his sureties in his official bond as sheriff of Wyandotte county, at the June Term 1869, for $2,350 and costs. Said judgment was rendered against *Ferguson* and his sureties on the ground that he had sold certain real estate in Wyandotte county, on an execution issued on a judgment rendered October 10th, 1865, in favor of Edmund Terry against Wheatley & Thatcher, which sale had been confirmed by the court, and then refused to pay the money in accordance with the decree and order of the court. At the June Term 1872 the district court decreed a perpetual injunction against the collection of said judgment. The facts are fully stated in the opinion of the

court, *infra*. From said decree the defendants appeal, and bring the case here by petition in error.

*D. B. Hadley*, for plaintiffs in error:

1. Can equity interfere to enjoin a judgment at law on the ground that the defendants had neglected to avail themselves of a defense which existed at the time of the trial? It seems well settled that it cannot. Am. Ch. Dig., 642; 2 Johns. Ch., 230; 37 Barb., 199; 5 How., 141, 192.

2. Has the supreme court set aside the sale made by Sheriff Ferguson, July 14th, 1866, and the confirmation thereunder? This question is determined in the negative by a simple examination of the facts. Who were the parties to the sale and the judgment and decree of the court in which the sale was made? The plaintiffs in that action were Michael Dively, Edward C. McCarty and Edmund Terry, and the defendants were Wilkins T. Wheatley, Thomas F. Thatcher, Moses M. Brodwell, The Great Republic Fire Insurance Company, of St. Louis, Thomas E. Tutt, Dent G. Tutt, John F. Baker, John M. Chrysler, Gabriella F. Wheatley, Mary Thatcher and Isabella Chrysler. Who were the parties in the case taken to the supreme court on the motion which was overruled at the June Term of the Wyandotte district court? Edmund Terry was named as plaintiff, and Wheatley and Thatcher alone as defendants. By reference to the case in 6 Kas., 427, it will be seen that the judgment of the district court was reversed on two grounds: 1st, the sale was made on a day not named in the notice published by the sheriff; 2d, the lot sold was not the one described in the notice. But the record here shows that these errors in the sheriff's notice did not exist. Before the district court took any action under the mandate, further than to file it, under an order of court the Tutts and Baker gave said Dively, McCarty and Terry, and all the other defendants, notice that they would on the first day of March Term 1871 file evidence of a correct publication of said sheriff sale. The proof was filed at the same term, showing that the publication on which the

sale was made was correct, but by mistake the sheriff had attached to his return an erroneous publication. Clearly, with all this evidence before the court, it would not sustain the motion to set aside the sheriff's sale. The cause set out in the motion for setting aside the sale did not exist. It would have been overruled whenever called up and the evidence presented to the court. The sale and confirmation then stand to-day as valid and effective as before the decision in the supreme court. That decision was made upon an untrue statement by the parties presenting the case. Again, the Tutts and Baker were not parties to the proceedings in the supreme court, and had no opportunity of being heard. It is submitted that it was a most palpable error for the court to find that the supreme court had set aside the sheriff's sale.

*James F. Mister*, also for plaintiffs in error:

1. The principle of *res adjudicata* is invoked in behalf of the judgment obtained by Thomas E. Tutt and others v. P. S. Ferguson and others and affirmed by this court, and is certainly decisive as to Ferguson, Cruise, Zeitz and Walker, which settles the case, as the other parties have no interest whatever in the controversy. When any tribunal has jurisdiction of the subject-matter of and the parties to any controversy, and renders a judgment thereon, such judgment is conclusive between the parties. *Anthony v. Halderman*, 7 Kas., 50; *Norton v. Graham*, 7 Kas., 166.

2. After a sheriff's sale has been confirmed, and the sheriff and his sureties sued for the purchase-money, they cannot raise any question of irregularity in the confirmation of the sale, or in any of the prior proceedings. 6 Kas., 427; 8 Kas., 370.

3. Judgments at law will not be opened or set aside except for fraud, or to relieve grievous hardships not otherwise remediable. They will not be opened to favor a payment which the complainant neglected to establish at a trial at law. 1 Mo., 654, 708; 2 Mo., 145; 10 Mo., 100.

*Nelson Cobb*, for defendants in error:

1. The right of Tutt & Co. to the balance of the proceeds of the sale under the execution on the foreclosure suit, obviously depends upon their ownership of the equity of redemption in the premises sold at the time of the decree. This was the position in which they stood. They had purchased under their attachment sale, and the confirmation of their purchase was not set aside until long afterward. This was the position set up by them in their answer in that suit. They claimed to be owners of the property under their purchase at the sale under the attachment suit. They now claim that the decree requiring the balance of the purchase-money to be paid to them, was made in their favor as attaching or judgment-creditors. This is obviously an after-thought, inconsistent with their answer in the foreclosure suit, and inconsistent with their subsequent claims to the possession. It is also inconsistent with a proper decree in the foreclosure suit. If they had then appeared as attaching or judgment-creditors only, the court would have ordered their debt to be paid out of the money remaining from the proceeds of the sale, after satisfying the mortgage, if sufficient, not that the whole of the money so remaining should be paid to them. 3 Caines, 84; 1 Wend., 87.

It is only by regarding Tutt & Co. as owners of the equity of redemption, that the decree in the foreclosure suit can be sustained; and when a decree or judgment is susceptible of more than one explanation, that one will be adopted which sustains the judgment. Since that decree, however, their standing as owners of the equity of redemption has been taken away by the action of this court, in setting aside the sale and confirmation in the attachment suit under which they purchased. They stand then in the attitude of attempting to enforce a judgment against the sheriff for money charged to have been collected by him, after their right to that money is gone.

2. The right of Tutt & Co. to recover against the sheriff

4—13 KAS.

and his sureties, depends upon the validity of the execution under which he acted, and his acts and return to such execution. While it is true that a sheriff cannot defend himself from paying money collected on the ground of irregularity in the prior proceedings, these proceedings being sufficient to protect him in executing the writ, yet it is equally true that if he has collected money on void process, he may defend himself from such payment, otherwise he would be liable to pay the money to the person who claimed it under the process without right, and to refund the money to him from whom it had been acquired.

The execution in the foreclosure suit, issued at the instance of Tutt & Co., and under which the sale was made to Bartlett, was void, and conferred no title on the purchaser, and imposed no duty of collecting the money upon the sheriff. Tutt & Co. being defendants and owners of the equity of redemption in the premises, had no right to sue out an execution to sell their own land, and the order of sale, so sued out at their own instance, was void. (1 Freeman Ch., 392.) The evidence clearly shows that the judgment of foreclosure had been fully paid, before this execution was issued. When a judgment has been satisfied, either by payment or by operation of law, no further execution can be issued on it, and such execution, if issued, will not give the officer holding it any right to levy upon, hold or sell property under it: 7 Johns., 427; 9 Mass., 137; 2 Southard, N. J., 479. And a sale under such an execution passes no title: 1 Cowen, 711; 8 Wend., 676; 4 Wend., 474; 7 Cowen, 21. A court of equity will interfere by injunction, to stop proceedings under an execution on a judgment that has been paid or otherwise satisfied, and prevent the collection of such judgment. 6 Ohio, 430; 4 Johns. Ch., 69.

3. The sale under the foreclosure suit made to Bartlett has been set aside, on petition in error to this court, and all rights acquired by such sale, either by the purchaser Bartlett, or by those who are to receive the purchase-money, fall with it. (6 Kas., 427.) The defendants below in this case, strongly

insist that this sale has not been set aside, because they, Tutt & Co., were not parties to the motion made for that purpose, and the finding of the court that it was so set aside, constitutes the principal error assigned in this court. It is a sufficient reply to this objection to say that the motion to set aside the sale, follows in this respect the writ under which the sale was made. All the parties named in the execution, are parties to the motion to set aside the proceedings under it. If the execution is valid, not naming all the parties to the judgment on which it is issued, the motion is valid also, and if the motion is defective, the execution is also, but this defect would be fatal to *any* rights of the defendants, Tutt & Co., under it.

But since the mandate of this court has been filed in the district court, reversing the action of the latter court in refusing to set aside the sale to Bartlett, Tutt & Co. have appeared in that court and filed evidence to sustain the sale. They are, therefore, by their own act, parties to the motion which they claim is still pending in the district court. According to their own showing, the question whether the sale to Bartlett shall stand, is yet pending and undetermined. They clearly have no rights under that sale, until it is settled whether it is valid or not. The sale is either good for all purposes, or bad for all purposes. It cannot be good enough to compel the sheriff to collect the purchase-money, and yet not good enough to be confirmed by the court. It is submitted that the true test of the sheriff's liability is, his right to compel Bartlett to pay the amount of his bid. He cannot be required to pay over what he has no legal right to collect.

Can the sheriff compel Bartlett to pay the amount of his bid? Not when the sale to him has been set aside, or while as defendants below contend, the question whether it shall be or not is yet pending and undetermined. Nor after it appears that the judgment on which the execution issued had been fully paid, before the execution was sued out or the sale made. Either of these defenses would be available to Bartlett, if sued by the sheriff for the amount of his bid; and they are

equally available to the sheriff in an action on his bond for not collecting it.

4. The sheriff and his sureties could not avail themselves of the defense that their judgment of foreclosure had been paid before execution, and the execution was therefore a nullity, when sued on their bond, for the reason that neither they nor their attorneys knew the fact that such payment had been made. Still less could the sheriff or his sureties have set up the fact that the sale to Bartlett had been set aside. The suit against them was instituted in February 1868, and the decision of this court was rendered at the July Term 1870; and the mandate was filed in the district court, March 21, 1871.

Under these circumstances, the sheriff and his sureties have the right to claim the interference of a court of equity. The general principle is, that where a judgment has been recovered in an action at law, and defendant has a good defense which it was impossible for him to interpose at the trial, as when the circumstances which create the defense have arisen since the trial, or where the facts constituting such defense were unknown to the defendant at the time of the trial, and could not with reasonable diligence be ascertained, a court of equity will interpose by injunction, and prevent the plaintiff from collecting or proceeding with his judgment. 2 Peere Williams, 424; 1 T. & R., 320; 2 Russell, 81; 3 Call, 439; 1 Breese, 147; 5 Peters, 99.

The opinion of the court was delivered by

VALENTINE, J.: Portions of this litigation have been brought to this court at least six times. Four cases have been reported, to-wit: *Wheatley v. Tutt*, 4 Kas., 195; *Wheatley, et al., v. Tutt*, 4 Kas., 240; *Wheatley v. Terry*, 6 Kas., 427; and *Ferguson v. Tutt*, 8 Kas., 378. One case was dismissed, to-wit, *A. B. Bartlett v. Wheatley, et al.;* and this is the sixth case. Other cases were litigated in the court below, which have not been brought to this court. In this opinion we shall mention such cases only as have some bearing upon

the case now before us. In the investigation of this case it will be necessary to examine more particularly the rights of said Thomas E. Tutt, Dent G. Tutt, and John F. Baker, than those of most of the others, as they are the real parties in interest in asking to have the judgment of the court below in this case reversed.

The record upon which this reversal is asked shows as follows: On September 9th, 1861, an action was commenced by Thomas E. Tutt, Dent G. Tutt and John F. Baker against Wilkins T. Wheatley and Thomas F. Thatcher. An attachment was issued therein and levied on Lot 5, in Block 6, in the city of Wyandotte. Judgment was rendered in the case on April 10th, 1863, in favor of Tutts and Baker and against Wheatley & Thatcher for $1,483, and costs, and said lot was ordered to be sold. Afterward the undivided-half of said lot was sold at sheriff's sale to Tutts and Baker for the sum of $1,667, and the sale was confirmed October 5th, 1863. Tutts and Baker took a sheriff's deed for said undivided-half of said lot, and the sheriff returned the writ for the sale of said property satisfied. Afterward the confirmation of said sale was reversed by the supreme court, ( *Wheatley v. Tutt,* 4 Kas., 195,) and the mandate from the supreme court was filed in the district court at the *January Term* (so the record shows, but *quære,*) 1867. Nothing seems to have been done with said case, or concerning it, since. Hence we suppose Tutts and Baker have lost their judgment-lien, (code of 1859, § 434; code of 1868, § 445,) and have also lost their interest in the lot, (code of 1859, § 458; code of 1868, § 467.) On May 20th, 1865, another suit was commenced in which Michael Dively, Edward McCarty and Edmund Terry were plaintiffs, and Wilkins T. Wheatley, Thomas F. Thatcher, Moses M. Brodwell, The Great Republic Insurance Company, Thomas E. Tutt, Dent G. Tutt, John F. Baker, John M. Chrysler, Gabrilla H. Wheatley, Mary Thatcher and Isabella Chrysler were defendants. This action was on a note given by Wheatley & Thatcher to Brodwell, and indorsed by Brodwell (waiving presentment, notice, etc.,) to Terry. The

action was also to foreclose a deed of trust given by Wheatley and wife (to-wit, Gabrilla Wheatley,) to Dively & McCarty, trustees, on the undivided-half of said Lot 5 to secure the payment of said note. Hence Terry was the real plaintiff, and Dively and McCarty were merely nominal plaintiffs. The defendants Tutt & Tutt and Baker seem to have set up their claim against said Wheatley & Thatcher, and their interest in said Lot 5. Judgment was rendered October 10th, 1865, in favor of Terry and against Wheatley & Thatcher for $2,317.90, and costs. The court found that Terry's lien on said lot was prior to that of Tutts and Baker, and ordered that if said judgment was not paid in ten days said undivided-half of said lot should be sold to pay, first, the costs, next, Terry's judgment of $2,317.90 and interest, and then that the remainder should be paid to Tutts and Baker, and that all the parties' interests in said undivided-half of said lot should be forever afterward barred and foreclosed. It seems from the record that on October 20th, 1865, (precisely ten days after the judgment was rendered,) Brodwell paid to Terry in New York city the precise amount of Terry's judgment, (less costs and interest,) to-wit: $2,317.90. Yet, strange as it may seem, nobody knew of this payment, except possibly Brodwell and Terry, until about six years afterward. After this supposed payment Terry's counsel, to-wit, Bartlett, filed a precipe in the district court for an execution on said judgment. The clerk of the district court, said James A. Cruise, issued it; and the sheriff of said county, said P. S. Ferguson, sold the said property under it to said M. M. Brodwell, the person who, it is said, paid said judgment. But Brodwell failed, however, to make payment on said sale, and the sheriff therefore returned no sale. Upon this execution however the sheriff collected from Chrysler about $125, which was sufficient to pay all the costs. An alias execution was then, on May 24th, 1866, issued by said clerk (on the precipe of Tutts and Baker) to said sheriff, and the sheriff then sold said property, (the undivided-half of said lot,) on July 14th, 1866, to said Bart-

lett for $4,500. The sheriff returned that said amount of $4,500 was paid by Bartlett, although in fact it never was paid. The sale was confirmed on November 1st, 1866. No sheriff's deed was ever executed to Bartlett under this sale, although it seems that Bartlett afterward claimed to own the property, and afterward, on January 21st, 1868, sold the property to one John Arthur for $4,500. Arthur still claims and has possession of the property. Bartlett now claims "that he did have an interest in said property derived from another source in no way connected with this matter." On June 16th, 1869, counsel for Wheatley and Thatcher, to-wit, J. P. Usher, moved the district court to set aside said sale, and to set aside said confirmation, on the ground of irregularities, to-wit, "because said sale was not duly advertised nor was made in conformity to law." No notice of this motion was given to any one except Bartlett and Ferguson, and no one else appeared on the hearing of the motion. There are some mistakes in this motion in the title of the case, in the number of the case, etc.; but still we are inclined to think it was sufficient as to Bartlett and Ferguson, who voluntarily appeared to answer to it, and would perhaps have been sufficient as to any one if notice had been given. The motion was overruled at the June Term 1869 of the district court. On July 8th, 1869, Wheatley and Thatcher alone proceeded by petition in error in the supreme court against said Terry alone for the purpose of reversing the said rulings of the district court. And at the July Term 1870 the supreme court reversed said rulings of the district court. (*Wheatley v. Terry,* 6 Kas., 427.) The mandate from the supreme court ordering the reversal was filed in the district court on March 24th, 1871. Counsel for *Terry,* J. P. Usher, (so the record shows, though probably it should have said counsel for Wheatley and Thatcher,) moved the district court to allow said mandate to be filed among the papers of the case, and to set aside the order confirming said sale in accordance with said mandate. The district court however never took any action upon the motion, or the mandate, except to order the

mandate to be filed. Previously, however, to-wit, on March 6th, 1871, counsel for Tutts and Baker filed a motion in the district court "for leave to file additional evidence of the publication of the advertisement of the time and place of" said sheriff sale, etc. And on the said 24th of March, 1871, said motion was sustained. Additional evidence was then introduced showing that the sale was regularly made. The notice was all regular, showing that "Lot No. 5" would be sold on the 14th of July 1866, and was published regularly for five weeks before the sale, while the notice appended to the sheriff's return, and brought to the supreme court, was an irregular notice that had been previously published for two weeks only, and then discontinued, when the said regular notice was inserted in the newspaper in its place. This irregular notice stated that "Lot No. 2" would be sold on June 30th, 1866. It should not have been annexed to the sheriff's return, nor should it have been used in the case; and if Tutts & Baker had received any notice of any motion, or any proceeding in any court to set aside said sheriff sale, they would probably have had said irregular notice stricken out, and the regular one inserted in its place. Or if the sheriff had done his duty in the first instance, and inserted the regular notice instead of the irregular one, no such motion or proceeding would have been instituted. Or even after said motion was made, if the sheriff, instead of making a voluntary appearance to the motion as he did, and waiving all objections thereto, and consenting that it should be heard *instanter*, had asked the court to allow him to amend his return in accordance with the facts, said sale would not have been ordered to be set aside by the supreme court, as it was, or by any other court. For the district court would have allowed the sheriff to make such amendment, and then the return would have shown the sale, the notice, etc., to have been regular, and the supreme court would have sustained it. It now seems that Terry, and his counsel, (Bartlett and Usher,) and the purchaser Bartlett, as well as Wheatley and Thatcher, the prin-

cipal defendants in that action, all wanted the sale to be set aside. The money for the payment of costs, officers' fees, etc., had already been collected from Chrysler without any sale of said lot. Hence the officers as well as others entitled to costs had but very little interest in the matter. This leaves Tutts & Baker as being about the only persons who were particularly desirous that said sale should not be set aside, and yet no notice was ever given to them of any proceeding in either the district court or the supreme court instituted for the purpose of having said sale set aside or vacated. It is a general rule of equity, (and the case at bar is an equity proceeding,) that he who seeks equity must do equity. Good faith must be practiced as well by the person who seeks equity as by the person from whom equity is sought.

On February 7th, 1868, Thomas E. Tutt, Dent G. Tutt, and John F. Baker commenced an action against P. S. Ferguson, sheriff, and John E. Zeitz, Isaiah Walker and James A. Cruise, sureties on the official bond of said sheriff, to recover from said sheriff and his sureties the amount which said sheriff collected or ought to have collected from Chrysler and Bartlett on the last-mentioned judgment after deducting the amount it would take to pay the judgment in favor of Terry and costs. In June, 1869, judgment was rendered in this case in favor of Tutts and Baker, and against Ferguson and his sureties, for $2,350, and costs. This case was taken to the supreme court by Ferguson and his sureties, and at the July Term 1871 of the supreme court the judgment of the court below was affirmed. (*Ferguson v. Tutt*, 8 Kas., 370.) In October, 1871, an execution was issued for the collection of this last-mentioned judgment, and following said execution the following proceedings were had: On December 30th, 1871, the present action was commenced by Pembroke S. Ferguson, James A. Cruise, John E. Zeitz, Isaiah Walker, Moses M. Brodwell, and Allison B. Bartlett as plaintiffs, against Thomas E. Tutt, Dent G. Tutt, John F. Baker, Wilkins F. Wheatley, Thomas F. Thatcher and Edmund

Terry as defendants, for the purpose of forever enjoining the collection of the judgment rendered in favor of Tutts and Baker and against Ferguson and his sureties on said sheriff's bond; and on June 17th, 1872, judgment was rendered in the district court perpetually enjoining the collection of said judgment, as prayed for by the plaintiffs below, (defendants in error in this court,) Ferguson and the others. This judgment was rendered upon the ground solely that said sheriff sale to Bartlett was void, and the reasons given why it was void are as follows: First, the Terry judgment had been paid before said sheriff sale was made; second, said sheriff sale was ordered to be set aside by the supreme court.

*First.* The said Terry judgment was paid on October 20th, 1865. The judgment on the sheriff's bond, now sought to be perpetually enjoined, was rendered in June, 1869, nearly four years after said payment was made. The judgment in the case at bar perpetually enjoining the last-mentioned judgment was rendered June 17th, 1872, nearly seven years after the payment of said Terry judgment, and about three years after the judgment was rendered now sought to be enjoined. Now if the fact of the payment of said Terry judgment is a good ground for enjoining the said judgment on the sheriff's bond, then, *a fortiori*, it would have been a good ground for not rendering said judgment on the sheriff's bond. In other words, said payment would have been a good defense to the action in which said judgment on the sheriff's bond was rendered. But it was not interposed in that action. Why not? The principal defendants in the court below, except Ferguson, (who did not testify in the case at bar,) testified that they did not know of said payment at the time said action was pending, nor at any other time since up to about the time of the commencement of this action, which was December 30th, 1871, over six years after said payment was made. But why did they not know it? Did they exercise any diligence in hunting up their defenses? Were they not guilty of the grossest negligence in not knowing of said payment in time

to make it available as a defense to said action? If the sheriff sale was void because of said payment, then the payment ought to have been known in less than six years. In fact, it ought to have been known before any execution was issued, certainly before the sale or the confirmation of the sale; most certainly before said motion was made to set aside the sale; and beyond all question, before said judgment was rendered on the sheriff's bond. The want of such knowledge can only be accounted for on the ground of fraud or gross negligence. Cruise was the clerk of the district court who issued said executions, who made all the entries in the case, and who kept all the papers connected with the case. Ferguson was the sheriff who sold the property, who returned that the money for which the property was sold was paid and who allowed his said sale to be confirmed. Counsel for defendants in error say that the sheriff did not make return that said money was paid. It is true that he did not make such a return in just so many words. But he did so return by necessary and unavoidable inference or implication. He returned that the property "was then and there duly struck off and sold by me [him] to Allison B. Bartlett for the sum of $4,500, he being the highest and best bidder therefor." He did not return that the money was not paid. It was his duty to collect the money before he made his return. (*Ferguson v. Tutt*, 8 Kas., 370.) And in his return he says, "*this writ is returned satisfied.*" (See *Armstrong v. Garrow*, 6 Cowen, 465, 467.) Besides, we do not think it would be good policy to allow an officer, after he has made a return which if liberally construed would show that he did his duty, and after other persons have acted upon such construction, to come in for the purpose of evading another duty and say by drawing fine distinctions concerning the construction of his own language that his return does not show that he did his duty and thereby by means of his own ambiguous language escape and evade the just consequences of his own omissions or laches in other respects. Bartlett, another plaintiff below in the case at bar, made an affidavit on March 9th 1872, which affidavit

was used as evidence in the case at bar on the trial thereof, and in which affidavit he states among other things the following:

"He was employed as attorney for the defendants in the suit of Thomas E. Tutt, et al., v. Wilkins T. Wheatley, et al.;" "that he has been employed in such capacity on·one side or the other in all suits and actions that grew out of the proceedings therein; that he was sole attorney of the plaintiffs in the cause wherein Edmund Terry et al. were plaintiffs and Wilkins T. Wheatley et al. were defendants; he had the sole control of the note and trust-deed declared upon in said last-named suit, and had the entire control of the judgment rendered therein;" "that he has had frequent and continued correspondence with said Edmund Terry, who recovered the judgment upon the note and trust-deed aforesaid;" "that this deponent had no knowledge or intimation from said Terry, or from any other person, by letter or otherwise, that the judgment in favor of said Terry in said cause had been paid until since the last term of this court, and a short time before filing the petition in this cause."

The petition in this cause was filed December 30th, 1871, and the said judgment was paid October 20th, 1865. Brodwell who paid said judgment to Terry is still living, and is one of the plaintiffs below (defendants in error) in this case. It will be remembered that it was nearly a year after said judgment was paid by Brodwell before said sale was made; more than a year before it was confirmed; nearly four years before any attempt was made by any one to set aside either the sale or the confirmation thereof; and more than six years before any attempt was made to avoid the sale on the ground that the judgment had previously been paid. Does this show diligence? Why did not some of the parties inform Terry or Brodwell that there was litigation concerning said sale? Why did not the sheriff, (Ferguson,) or Terry's counsel, (Bartlett,) inform Terry of said sale, and inquire of him what they should do with that portion of the proceeds thereof, to-wit, $2,317.90 and interest, belonging to Terry? Why did not some one of the parties now interested in having said judgment against the sheriff and his sureties enjoined

exercise some diligence in ascertaining that the Terry judgment was paid? Not one of these questions is answered by the record. Now, as the record does not show that there was any diligence exercised in ascertaining this fact of payment so as to set it up as a defense in the action on the sheriff's bond, we think the judgment rendered on said bond cannot be perpetually enjoined merely because of said payment. Neither the petition in the court below, nor the evidence, nor the findings of the court, show any diligence. In this respect all are defective. None of them show a complete cause of action. And for this reason we think the judgment of the court below ought to be reversed, and a new trial granted. The record shows that a motion for a new trial was made and overruled. In this the court below also erred.

*Second:* But it is claimed that said judgment should be enjoined because said sheriff sale was subsequently ordered to be set aside by the supreme court. There are several answers to this: 1st.–Said sale was ordered to be set aside for a supposed irregularity, which never in fact existed. It was ordered to be set aside purely for the fault of the sheriff himself in making a false return. And can he now take advantage of his own wrong? Is it possible for an officer to create a good cause of action, (as is claimed he can in this case,) or a good defense (as is claimed he can to the action on the sheriff's bond,) in favor of himself by his own wrongful acts? We suppose not. 2d.–Tutts and Baker were not made parties, and had no notice of said motion to set aside said sale, and hence the motion was rightfully overruled in the district court as to them. (*Mitchell v. Milhoan,* 11 Kas., 617.) Whatever order however might have been made on the motion would under such circumstances have been immaterial as to them. 3d.–Tutts and Baker were not made parties to the petition in error in the supreme court, nor had they any notice thereof; and hence said order of reversal could not affect them or their rights. (*Ferguson v. Smith and Dunham,* 10 Kas., 401; *Armstrong v. Durlund,* 11 Kas., 15; *Hodgson v. Billson,* 11 Kas., 357.) No judgment of reversal

was ever rendered in the supreme court against Tutts and Baker, nor could there have been any such judgment, for the supreme court has no more power to render a judgment against a party over whom it has no jurisdiction than any other court has. 4th.–Said sale has never been set aside as against Tutts and Baker. 5th.–Nor can it now be set aside for a mere irregularity on the part of the sheriff in making his return of the sale, after the sale has been confirmed, after judgment has been rendered against the sheriff and his sureties for refusing to pay over money collected on said sale, so as to benefit the sheriff and his sureties and to the injury of the parties who obtained such judgment.

The decree of the district court perpetually enjoining the collection of said judgment is reversed, and a new trial awarded.

All the Justices concurring.