GEO. M. NOBLE, *et al.*, V. JANET BUTLER, *et al.*

FACTS, *No Basis for Injunction to Restrain Collection of Judgment.* Where one person loans money for another upon a note and mortgage, and includes usurious interest in the note and mortgage; and the agent takes the note and mortgage in his own name and indorses the same to the lender, in accordance with an agreement previously made between the agent and the lender that the note and mortgage should be so executed and indorsed; and this agreement was made for the purpose, among others, that the lender should get the benefit of the usurious interest included in the note and mortgage, and also, if the note and mortgage were not paid at maturity, that the lender should get the benefit of protest fees and damages; and the note and mortgage were not paid at maturity, and a suit was commenced by the direction of both the lender and the agent, against the maker of the note and mortgage, also making the agent a party defendant; and it was agreed between the agent and the attorney for the plaintiff that the agent should make no defense to the action, and that when the time came for rendering judgment upon the note and mortgage, that the attorney would dismiss the action as to the agent, and not have any judgment rendered against him, but afterward the judgment was in fact rendered against the agent, as well as against the payee and mortgagee of the note and mortgage; and afterward, but on the same day on which the judgment was rendered, the attorney told the agent that the action had been dismissed as to the agent, and that no judgment was rendered against him; and the attorney having formerly been a law partner of the agent, and the agent, believing him and relying upon what he said, gave no further attention to the matter; but afterward the agent, who was still the agent of the lender, or-

dered an execution to be issued on the judgment, which was done, and the mortgaged property sold thereunder, and the agent bid it in for the plaintiff and afterward had the sale confirmed and a sheriff's deed executed to the plaintiff for the mortgaged property; and the mortgaged property did not sell for enough to pay the entire judgment, but left a balance due thereon of some $300 or $400; and the agent still did not know that the judgment was rendered against him, and did not ascertain that fact for about three years after the judgment had been rendered; and after more than three years had elapsed, the plaintiff ordered an execution to be issued on the judgment for the balance due thereon; and the sheriff, by virtue of such execution, levied upon and seized the property of the agent; and he then commenced an action against the plaintiff and the sheriff to restrain them from collecting said execution and judgment: *Held,* That under the circumstances of the case, the action cannot be maintained.

*Error from Shawnee District Court.*

INJUNCTION, brought by *Noble* against *Butler* and others, to perpetually enjoin the collection of the remainder due on a certain judgment. The nature of the action, and the facts, appear in the opinion. Judgment for the defendants, at the May Term, 1880, of the district court. *Noble* brings the case here.

*Rossington & Smith,* for plaintiff in error.

*J. P. Greer,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by George M. Noble against Janet Butler and W. D. Disbrow, sheriff of Shawnee county, Kansas, to perpetually enjoin the collection of a balance due on a certain judgment, rendered in favor of Mrs. Butler, and against the plaintiff and others. The facts of the case appear to be substantially as follows:

In March, 1873, the plaintiff Noble and the defendant Mrs. Butler resided in Topeka, Kansas. Mrs. Butler had money which she desired to loan, and Noble acted as her agent and attorney in loaning and collecting the same. About March 22, 1873, the plaintiff made a loan for the defendant of $1,030 to Samuel F. Craig, taking his note, secured by a

mortgage therefor. The note and mortgage were taken for an amount larger than the sum loaned, the difference being usurious interest, and the note and mortgage were both made payable to the plaintiff. They were made payable to the plaintiff for three reasons: *First,* It was expected that Mrs. Butler would change her place of residence, and that the plaintiff would attend entirely to the business of collecting the note and mortgage, and to all business connected therewith; *second,* it was intended that the note and mortgage should be indorsed before due to Mrs. Butler, so that she might appear to be an innocent purchaser thereof, and so that no question with regard to the usurious interest would be likely to be raised; and *third,* it was intended that the note and mortgage should be indorsed as aforesaid, so that protest fees and damages might be recovered, provided the note and mortgage were not paid at maturity. They were so indorsed immediately after they were executed. Afterward they became due, but the payee and mortgagee failed to pay them. At that time and up to July 1, 1874, the plaintiff, Noble, and John A. Gray were partners as attorneys at law, under the firm-name of Noble & Gray. While Noble was still acting as the agent of Mrs. Butler, the firm drew up a petition for the purpose of commencing an action on the note and mortgage, and made Mrs. Butler the plaintiff, and Craig and wife and Noble the defendants, and signed the petition, "Noble & Gray, attorneys for plaintiff." Afterward, and after the firm of Noble & Gray had dissolved, Noble, at the request of Mrs. Butler, directed Gray to commence an action on the note and mortgage; and Gray did so by filing the said petition in the district court and having the proper summons issued thereon. Allegations were inserted in this petition which would have authorized the plaintiff to recover protest fees and damages, provided the allegations were not denied, or were proved; and we suppose, of course, that the allegations also covered the full face of the note and mortgage, including the usurious interest embodied therein. It was agreed, however, between Noble and Gray, that Noble should not make any defense to

the action, and that when the time arrived for taking judgment on the note and mortgage, that Gray should dismiss the action as to Noble, and take judgment against Craig and wife only. Afterward, and on February 1, 1875, judgment was rendered on the note and mortgage in favor of the plaintiff, and against all the defendants, including Noble. It seems that Gray did not personally attend to the matter, but allowed one F. G. Hentig to appear and take the judgment. Afterward, and on the same day, Noble asked Gray if he had attended to the matter, who answered that he had, and that the action was dismissed as to Noble, and that no judgment had been taken against him; and Gray having been a partner of Noble, and Noble having confidence in him, believed what he said, and gave no further attention to the matter. Afterward, Noble, still acting as the attorney and agent of Mrs. Butler, ordered an execution to be issued on the judgment, Hentig filing the proper precipe therefor. Afterward, the mortgaged property was sold on the execution, and Noble bid it in for Mrs. Butler. He bid it in for the sum of $1,100, which left a balance due on the judgment of some $300 or $400. Afterward the plaintiff procured a confirmation of this sale; and also procured the execution of a sheriff's deed for the property sold to Mrs. Butler. Afterward, and about February 1, 1878, the plaintiff ascertained for the first time that said judgment had been rendered against him, as well as against Craig and wife. He was still the agent and attorney of Mrs. Butler, and directed F. G. Hentig to enter a release of said judgment against Noble upon the records of the district court, which Hentig did, and which he did ostensibly as the attorney of Mrs. Butler. Hentig had previously been entered as an attorney of record in the case for Mrs. Butler. Hentig, however, was not in fact the attorney of Mrs. Butler, and had no authority to enter said release. Afterward the defendant, Mrs. Butler, caused an execution to be issued on said judgment and placed in the hands of the defendant, Disbrow, sheriff, by virtue of which execution the sheriff, Disbrow, levied upon and seized the property of the

plaintiff, Noble. The plaintiff then, and on January 21, 1880, commenced this action to restrain the sheriff and the defendant, Mrs. Butler, from all further proceedings in the collection of said execution or of said judgment.

The plaintiff alleged the foregoing facts in his petition, and the defendant demurred thereto, and the court below sustained the demurrer; to which the plaintiff excepted, and now presents the question of the sufficiency of his petition to this court.

We think the petition is insufficient. It does not state facts sufficient to constitute a cause of action. The question presented to us is, not merely whether a court of equity may relieve a plaintiff from the consequences of a wrong, where the defendant is undoubtedly guilty of committing the wrong, and the plaintiff appears to be *in pari delicto;* nor is the question presented to us merely whether a court of equity may relieve a plaintiff from the consequences of his contract, where the contract is against law, or against public policy, or against public morals, and is made principally for the benefit of the defendant, and not especially for the benefit of the plaintiff, where the plaintiff seeks the relief; but the question presented to us embraces all these particulars, and more, too. This other question is also presented to us, whether a court of equity will relieve a party from the consequences of a judgment, which the party has, through the most unaccountable negligence, allowed to be entered against him, and to remain standing against him for over three years, before he takes any steps to relieve himself therefrom. The plaintiff says that during that time he did not know that the judgment had been rendered against him. This is unaccountably strange, considering his connection with the parties, and with all the proceedings in the case. He was during all that time the agent for the plaintiff. He was one of the defendants in the case. He probably drew up the petition himself. It was drawn up in the name of himself and his former partner, as attorneys in the case. He had the execution issued in the case; he purchased the property of his co-defendants for the plaintiff when

the property was sold on execution; he had the sale confirmed and the sheriff's deed executed to the plaintiff; and yet he says he did not know that the judgment had been rendered against himself, as well as against his co-defendants, until after all this was done. He says that he relied upon what his former partner, John A. Gray, who acted as attorney for the plaintiff, said to him. But he certainly had no right to rely so implicitly as he did upon a person who was then acting for the other party, and on a side adverse to him. (*Sweet v. Hentig*, 24 Kas. 497.) Parties to actions in courts of justice should act with the greatest vigilance in protecting their rights, otherwise they may forever lose the opportunity of having their rights considered in a court of justice. (*Hill v. Williams*, 6 Kas. 17; *Cole v. Walker*, 7 Kas. 139; *Tutt v. Ferguson*, 13 Kas. 45; *Mehnert v. Thieme*, 15 Kas. 368.) If it it is legally wrong that the plaintiff should pay said judgment, then he had a defense to the action in which said judgment was rendered, and he should have appeared in the district court before any judgment was rendered, made a defense to the action, and prevented the judgment from being rendered against him.

Under the circumstances of the case, as they are now presented, we think the plaintiff has no remedy. For the purposes of this case, it might be admitted that, if the plaintiff's wrong, in uniting with the defendant in devising a scheme for the purpose of procuring usurious interest and protest fees and damages from Craig, was the only thing in the way, then that he might be relieved by a court of equity from the consequences of such wrong. It might also, for the purposes of this case, be admitted that, if the contract entered into between the plaintiff and the defendant was the only thing in the way, then that the defendant might be relieved from the consequences of that contract. And it might also be admitted that, if the judgment rendered against the defendant stood alone, not connected with any wrong, but simply rendered because of the negligence of the plaintiff in not making any defense to the action in which such judgment was rendered, that the

plaintiff might even then be relieved from the consequences of his negligence in allowing such judgment to be rendered against him.   But taking all these things together and in the aggregate, the plaintiff certainly has no grounds for relief. But we might here say that courts of equity seldom, if ever, reach forth to relieve persons from the consequences of their own acts or their own negligence, when, by the exercise of the slightest diligence, such persons could easily furnish their own relief.   Courts of equity require that persons shall themselves exercise reasonable diligence in the protection of their rights, and that they shall not depend slothfully upon the action of courts of equity.   And further: Courts of equity will seldom interfere where parties have an adequate remedy at law.   Of course the defendant would have no right to complain even if the judgment sought to be enjoined in this case were set aside, or were perpetually enjoined; but the public is interested, as well as the parties, in the manner in which proceedings are carried on in courts of justice.   Courts cannot be trifled with by having sham proceedings carried on before them, in the manner in which the plaintiff desired to have the case of Mrs. Butler against himself and Craig and wife carried on in the court below.   If it was wrong for Mrs. Butler to recover a judgment against the plaintiff, then he should not have allowed himself to have been made a party to that case.   He should not have consented to the sham proceeding of having a suit carried on against him as a defendant, if no judgment was to be rendered against him.   But if he was made a party against his will, then he should have set up all the defenses in the action which he had, and should have prosecuted them with all the energy which he could command.   Having failed to do this, he has lost his remedy, provided he ever had any.

The judgment of the court below will be affirmed.

All the Justices concurring.