HARVEY M. ROUNSAVILLE v. WILLIAM R. HAZEN.

1. JUDGMENT—*Entry of Release, Void.* A release of a judgment was entered upon the appearance docket by a person who signed the release as "attorney of record," but he was not an attorney of the judgment creditor, and had no authority from the judgment creditor to enter such release, and the judgment had never been paid or satisfied. *Held,* That the release was void: First, because the person entering the release had no authority therefor from the judgment creditor; and second, because an attorney-at-law has no power, except by special authority from his client, to release his client's judgment where the judgment has not been paid or satisfied.

2. NOTICE OF SHERIFF'S SALE— *Omission to Publish Sale, When Voidable.* Where the notice of a sheriff's sale of real estate is published in a weekly newspaper for more than thirty days prior to the sale, but is not published in every issue of the newspaper up to the day of sale, *held,* that such omission to publish the notice in all the issues of the newspaper up to the day of sale will render the sale voidable, and that such a sale may be vacated or set aside upon proper motion before its confirmation; but such omission does not render the sale void to the extent that it may be treated as void in a collateral proceeding or upon a collateral attack.

### *Error from Shawnee District Court.*

ACTION in the nature of ejectment, brought by *Hazen* against *Rounsaville.* August 4, 1883, judgment was rendered for the plaintiff. The defendant brings the case to this court. The material facts are stated in the opinion.

*Wm. P. Douthitt,* for plaintiff in error.

*J. P. Greer,* and *Hazen & Isenhart,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action in the nature of ejectment, brought by William R. Hazen in the district court of Shawnee county, on May 26, 1882, against Harvey M. Rounsaville, to recover lots 385 and 387 on Taylor street, in the city of Topeka. The case was tried before the court and a jury, and the jury found a general verdict in favor of the plaintiff and against the defendant, and judgment was rendered accordingly.

The defendant brings the case to this court for review. It is admitted that both parties claim title to the property under Jay Ward, and it is incontestably proved that both parties hold title under George M. Noble, the grantee of Ward and wife and the grantor of Rounsaville. The principal facts of the case appear to be substantially as follows: On January 14, 1873, Ward owned the property in controversy, and on that day he and his wife conveyed it to George M. Noble by a quitclaim deed duly executed and acknowledged before John A. Gray, notary public. This deed was recorded January 16, 1873. The defendant attempted to show that this deed was a forgery, but utterly failed in the attempt. On February 1, 1875, Janet Butler recovered a judgment in the district court of Shawnee county against Samuel F. Craig and wife and George M. Noble. All the property of Craig and wife, subject to judicial process, was sold on such judgment, but not for enough to satisfy the judgment, and there still remained due on the judgment a sum of money ranging somewhere from $300 to $400. On October 22, 1878, Noble procured F. G. Hentig to enter a release of the judgment as against Noble on the appearance docket of the district court of Shawnee county, which release reads as follows: "October 22, 1878.—This judgment, rendered against George M. Noble as indorser, is hereby released as to him, this 22d day of October, 1878.— F. G. HENTIG, Attorney of record." On October 25, 1878, Noble, with his wife, conveyed the property in controversy, by warranty deed, to Harvey M. Rounsaville, the defendant in this action, and the deed was recorded on December 30, 1878. About January 21, 1880, Noble commenced an action in the district court of Shawnee county against Mrs. Butler and others, to enjoin the collection, as against him, of the remaining portion of said judgment, upon the ground that the judgment had been obtained against him through fraud and mistake, and had been subsequently released. This case was finally decided against Noble, and in favor of Mrs. Butler, at the January term of the supreme court in 1881. (*Noble v. Butler*, 25 Kas. 645.) On November 15, 1881, Mrs. Butler

assigned and transferred the judgment to William R. Hazen. Executions had been issued on this judgment from time to time, so that the judgment never became dormant.    On March 25, 1882, a final execution was issued on the judgment, and was immediately levied upon the aforesaid lots, and on April 29, 1882, the lots were sold under such execution to William R. Hazen, for $1,334.    On May 22, 1882, the sale was confirmed, and on the next day the sheriff executed a deed for the property to William R. Hazen; and on May 26, 1882, Hazen commenced this action against Rounsaville for the recovery of the property.    After paying the foregoing judgment, with all the interest and costs thereon, out of the proceeds of said sale, a balance of $369.40 still remained in the hands of the sheriff, and a dispute arose as to who was entitled to this surplus fund—Noble, or Rounsaville.    It was finally decided, however, in the supreme court, that Rounsaville, as the grantee of Noble, was entitled to the fund. (*Butler v. Craig*, 29 Kas. 205.)

The plaintiff in error, defendant below, claims that the court below erred: First, "in declaring as a matter of law that the release executed by Hentig was void;" second, in holding that the notice of the sheriff's sale was valid, the notice having been published in a weekly newspaper for more than thirty days, but not in every issue of the newspaper up to the day of sale. (*McCurdy v. Baker*, 11 Kas. 111; *Whitaker v. Beach*, 12 id. 492.)

We shall consider these alleged errors in their order.

I. The plaintiff in error, defendant below, claims that the court below erred in declaring as a matter of law that the said release was void, for various reasons, among which are that, presumptively, the lease is valid.    Presumptively, Hentig had authority as an attorney-at-law to enter the release; the evidence of Noble and even of Hentig tended to prove that Hentig had authority to enter such release; the record of the case in which the judgment was rendered tended to show that Hentig had such authority; Rounsaville was an innocent and *bona fide* purchaser of the property; and as Mrs. Butler and

Hazen permitted him to occupy the property and to make improvements thereon from October 25, 1878, the time when Noble and wife conveyed the property to Rounsaville, up to May 26, 1882, the time when Hazen commenced this action against Rounsaville, Hazen is estopped from claiming that the said release is void. We are inclined to think, however, that the decision of the court below with reference to the validity, or rather invalidity, of the release is correct. The release, as entered upon the appearance docket, had no more force than though it had been entered upon a separate piece of paper and handed to Noble or Rounsaville; for there is no statute authorizing a release, or even a satisfaction of payment, of a judgment to be entered upon the appearance docket. And the release in the present case does not purport to show a satisfaction or payment of the judgment, or any payment on the part of Noble, and in fact Noble had never paid anything; but the release merely purports to show a naked, voluntary release; and it does not even show that Hentig was the attorney or agent of Mrs. Butler; and he was not in fact her attorney or agent at the time of entering the release. The evidence is conclusive upon that point. At one time it seems he was her attorney, but that relation had ceased to exist long before this release was entered. It does not appear that he was Mrs. Butler's attorney of record *when the judgment was rendered* in her favor and against Craig and wife and Noble; and it does not appear that *at that time* he was even an attorney of record at all. John A. Gray was her attorney of record at that time. It hardly appears that Hentig was ever Mrs. Butler's attorney of record; but even if it does, he was not her attorney in any respect when the release was entered. Besides, an attorney-at-law has no power, except by special authority from his client, to release his client's judgment, where the judgment has not been paid or satisfied. (*Marbourg v. Smith*, 11 Kas. 554, 561, 562; *Herriman v. Shomon*, 24 id. 387, 388, and cases there cited; *Jones v. Inness*, 32 id. 177; *Beers v. Hendrickson*, 45 N. Y. 665; *Lewis v. Woodruff*, 15 How. Pr. 539; *Wilson v. Wadleigh*, 36 Me. 496; *Varnum v. Bellamy*, 4 McLean, [U. S.

C. C.] 87; *Kellog v. Gilbert*, 10 Johns. 220; *Simonton v. Barrell*, 21 Wend. 362; *Boyne v. Hyde*, 6 Barb. 392.) And there is no pretense in this case that the judgment had been paid or satisfied when this release was entered; and there is not the slightest evidence in all the record tending to show that Mrs. Butler ever gave any person authority to release the judgment as to Noble or as to anyone else; but all the evidence, so far as it goes and so far as it is applicable, tends to show directly the reverse. It is true that Noble testified that it was the understanding between the parties before the judgment was rendered, that no judgment should be rendered against him; but he does not even intimate that Mrs. Butler at any time afterward ever consented to a release of the judgment. Noble in fact testified that he had no knowledge that any judgment was ever rendered against him until the very day or the day before he procured Hentig to enter said release on the appearance docket. It is also true that Noble testified that he had been Mrs. Butler's agent "all the way down" from the time when the money was first loaned, which created the claim upon which said judgment was rendered, until after the release was entered; but he did not state the full nature or character of his agency, or that it included the power to release judgments rendered in favor of Mrs. Butler and against himself, or against anyone else, and it certainly cannot be presumed from the nature of the transactions between them that any such power or agency did in fact exist.

It is also in evidence that Rounsaville had full knowledge of said judgment before the release was entered, and before he purchased the property from Noble; and that while he and Noble were negotiating with reference to the purchase and sale of the property they procured an abstract of the title to the property, which showed that the judgment was in fact a lien upon the property; and the evidence is undisputed that Hentig himself, during that very time, told Rounsaville that the judgment was a lien upon the property, and that, while he was willing to release the judgment, as Noble desired him to do, yet that he did not consider that anything he, Hentig, might

do with reference to the matter, would be worth anything. This conversation between Hentig and Rounsaville occurred while the negotiations were pending between Noble and Rounsaville with reference to the purchase and sale of the property, and on the same day or the day before, Hentig in fact entered the release; but it does not appear that it occurred in the presence of Noble. Mrs. Butler resided in Topeka at that time, but it does not appear that Rounsaville or Noble, or anyone for them, consulted her with reference to the matter. Rounsaville purchased the property with a full knowledge of all the facts, and he cannot in any sense be considered as an innocent purchaser, and neither is Hazen estopped by any of the facts disclosed, from maintaining this action. The evidence further shows that Hazen and Rounsaville, at different times, had the question of a compromise with reference to their conflicting claims to the property, under consideration, but that they could never agree upon the terms of the compromise. As before stated, we think the decision of the court below upon this question is correct.

II. The plaintiff in error, defendant below, also claims that the court below erred in holding that the notice of the sheriff's sale was valid. It appears from the evidence that this notice was published in a weekly newspaper, on March 30th, April 20th, and April 27th, of the year 1882, for the sale which was to take place, and did take place, on April 29th of that year, and that the notice was not published in such newspaper on April 6th, or April 13th, but for some unexplained reason was omitted from the issues of the paper on those days and of those dates. Does this omission render the notice void? We think it renders the notice voidable, and for that reason the sale might have been vacated or set aside upon proper motion before its confirmation. (*McCurdy v. Baker,* 11 Kas. 111; *Whitaker v. Beach,* 12 id. 492.) But we do not think that the omission renders the sale void, or that it may be treated as void in any collateral proceeding, or upon any collateral attack like the present. (Freeman on Executions, §§ 286, 339; Freeman on Void Judicial Sales, § 28;

Herman on Executions, §§ 251, 292, 301; *Paine v. Spratley,*
5 Kas. 525; *Moore v. Pye,* 10 id. 252; *Pritchard v. Madren,*
31 id. 38, 50, *et seq.,* and cases there cited; *Cross v. Knox,* 32
id. 725.)

Perceiving no error in the rulings or judgment of the court
below, the judgment will be affirmed.

All the Justices concurring.