Stetson v. Freeman.

HERBERT D. STETSON, *et al.*, v. W. H. H. FREEMAN.

1. SHERIFF'S SALE; *Amendment of Return; Notice; Practice.* In a return made on an execution of a sale of a city lot, the sheriff stated that the property was struck off to F., who refused to pay the amount of his bid, and that the execution was unsatisfied. At the succeeding term of court, H., the execution creditor, made a motion to require the sheriff to amend his return so as to conform to the facts, and to show that the lot was sold to her instead of to F., who was her attorney. The motion was resisted by the sheriff, and made and allowed without notice to the defendant in the execution. The sheriff thereupon amended his return showing a sale of the lot to H., and at the same term of the court the sale was confirmed, following which the sheriff conveyed the lot to the purchaser by a deed. Subsequently the defendant in the execution conveyed the same property to S. *Held,* In an action brought by the grantee of the purchaser at the sheriff's sale to quiet his title to the lot, that the return first made by the sheriff on the execution was not conclusive, and might be amended conformably to the facts upon the application of the purchaser, officer, or either of the parties to the action ; and that as the application to amend was made prior to the confirmation of the sale, no new or additional notice to the defendant in the execution was necessary; and *held, further,* that the judgment and execution being valid, the sheriff's deed could not be attacked nor the proceedings impeached, in a collateral action.

2. BOUNDARIES, *General Reputation to Prove.* Where the identity and boundaries of city lots cannot be determined by the recorded plat, nor from any monuments on the ground, general reputation may be received to establish them, in the absence of evidence of a higher and better nature.

*Error from Marshall District Court.*

ACTION originally brought by J. C. Frissell and another against John V. Coon and E. J. Coon, partners under the firm-name of John V. Coon & Son, and Randall Stetson, to quiet their title to lot eleven on the county road within the city of Blue Rapids, and which they further describe by metes and bounds. It being made to appear to the court that the defendant Randall Stetson had transferred his right and interest in the property in dispute to *Herbert D. Stetson* and *William H. Tucker,* they were, upon application, made parties

defendant, and permitted to file their answer. In it they allege that the sheriff's deed under which the plaintiffs claimed title to the lot, was executed by the sheriff without legal authority, and was void. They further allege that the land described in the plaintiffs' petition was not that which was described and intended to be conveyed by the sheriff's deed. Subsequently, the defendant John V. Coon filed an answer disclaiming any right or interest in the premises, and E. J. Coon answered that he claimed only under a tax deed which was admitted to be invalid. Afterward, it appeared to the court that the interest of the plaintiffs in the subject-matter of the action had been transferred to *W. H. H. Freeman* during the pendency of the action, who was by the agreement of the parties substituted for the plaintiffs; and the real controversy in the case was between W. H. H. Freeman, as plaintiff, and Herbert D. Stetson and W. H. Tucker as defendants. At the March Term, 1884, the cause was submitted to and tried by the court, and the following findings of fact and law were made:

"1. As conclusions of fact in this case, the court finds that since this suit was commenced, whatever title plaintiffs had has been conveyed to W. H. H. Freeman, and that whatever title defendant Randall Stetson had has been conveyed to William H. Tucker and Herbert D. Stetson; also that the firm of John V. Coon & Son had no right or title to said premises, except that Emir J. Coon, a member of the firm of John V. Coon & Son, has a tax deed to said premises, which deed it is admitted, however, is invalid, but it is also agreed that said Emir J. Coon has a lien by virtue of said tax deed for the sum of $27.15, and that the real controversy is between said W. H. H. Freeman and the said William H. Tucker and H. D. Stetson, who have by leave of court filed an answer herein.

"2. The property described by metes and bounds in the petition, and which the plaintiff claims, is lot eleven on the county road in the city of Blue Rapids, Marshall county, Kansas, and is of the value at this time of about $2,000.

"3. There are two objections made to the plaintiff's title by said defendants Tucker and Herbert D. Stetson: first, that the sheriff's deed under which the plaintiff claims, is invalid;

and second, that if invalid it does not convey all of the metes and bounds claimed by the plaintiffs in their petition.

"4. It is admitted that Jane F. Hathaway had a valid judgment against the Blue Rapids Town Company which was obtained on the 28th of March, 1877, and that the Blue Rapids Town Company at that time owned the premises described by the plaintiffs in their petition as follows, to wit, lot No. eleven on the county road in the city of Blue Rapids, Marshall county, Kansas, the said lot eleven being within the following metes and bounds, to wit, beginning at a round iron pin about two and one-half feet long, flattened near the top, with W. H. H. cut therein, and driven in the county road in the quarter-section line running north and south through the center of section twenty, township four, range seven, east, at a distance of one hundred seventy-five feet north from a stake on the said quarter-section line, said stake being two hundred thirty-two feet west from the west end of the iron bridge crossing the Big Blue river in said city, and twenty-seven feet east of the northeast corner of D. Fairbanks's stone dwelling house situate on the west side of said county road, said stone being marked on the top with a cross thus, +; thence east from said iron pin to the northeast corner of what is known as John V. Coon & Son's gypsum mill; thence northerly along the outside of the sea-wall seventy-nine feet; thence west to a round iron pin about two and one-half feet long, flattened near the top, with the name 'Rix' cut in the same, said pin being on the said quarter-section line; thence south seventy-nine feet on said quarter-section line, to the said iron pin marked W. H. H., at the place of beginning, excepting therefrom a strip of land within said metes and bounds and along said quarter-section line recorded and dedicated as a part of the county road. [For this admission, see second defense in answer of Tucker and Stetson filed September 11, 1883.] It is further admitted that the title to said premises was in said Blue Rapids Town Company at the time of the levy of the execution under said judgment, and if not divested by the sale under said execution, that it was still in said town company at the date of the sheriff's deed made to Miss Hathaway on December 26, 1878. It is also admitted that at the commencement of this suit whatever rights Miss Hathaway acquired by said deed were in plaintiff, and that those rights are now in said W. H. H. Freeman.

"5. On the 13th of December, 1879, the Blue Rapids Town Company made a conveyance of whatever rights it had

at that time in said premises to Randall Stetson, and since this suit was commenced he has conveyed his interest, whatever it may be, to said Tucker and Herbert D. Stetson.

"6. The sheriff, in making the levy under the execution on the Hathaway judgment, described the property levied upon as follows: On lot eleven, with fifty-horse water power attached, county road, street in the city of Blue Rapids, Marshall county, Kansas; also, the proceedings under said execution were regular, but the sheriff's return on said execution in regard to the sale of said lot eleven is as follows: 'And at the time and place stated in said notice, I offered the above lands and tenements above described for sale, to wit, lot eleven, with fifty-horse water power attached, county road, said lot being in the city of Blue Rapids, Marshall county, Kansas; and I did strike off to W. H. H. Freeman lot eleven, county road, with the fifty-horse water power attached, at and for the price of $667, being two-thirds or more than two-thirds of the appraised value thereof of said lot so struck off to said W. H. H. Freeman, he being the highest and best bidder therefor, and afterward the said W. H. H. Freeman refused to pay the amount of his bid or any part thereof; and I hereby return said lot not sold for want of good and sufficient bids, and I hereby return this execution unsatisfied in whole or in part.' Afterward, at the next term of court, said Hathaway made a motion to compel the sheriff to amend his return showing a sale of said lot. She claimed that said Freeman was her attorney and made the bid in her behalf and not on his own account, and her judgment being large enough to cover the amount of said bid, and the court finding that said Freeman did bid for her and not for himself, said motion was allowed, and the said sheriff ordered to amend his return accordingly, which he did, and the sale was confirmed, and a sheriff's deed made to her December 26, 1878, in which the property was described as in the levy. The sheriff resisted this motion, but the Blue Rapids Town Company had no notice of the motion to compel the sheriff to amend his return, or of the motion to confirm.

"7. When the said Blue Rapids was platted and the plat filed, it embraced a strip of land lying north and south along the Big Blue river about two hundred and thirty-two feet wide, between what is called the county road running north and south, and the Big Blue river. This strip was platted into lots as long as said strip is wide, and about eighty feet wide, one end of which lots abutted on the river and the other on

the said county road.   One of the lots was numbered on said plat as lot eleven.   A dam was erected across said river and a bridge built across the dam, which is the iron bridge referred to in the description in plaintiffs' petition.   These lots were below the dam, and were intended as water-power lots; that is, lots upon which buildings might be erected containing machinery to be propelled by water power.   This plat was filed for record January 28, 1871; no monuments were placed at the corners of said lots, and it was a very difficult matter to determine their exact boundaries.   To avoid the trouble, the town company commenced to sell tracts of land from the place where said lots were located by metes and bounds, describing the boundaries of the lots.   The first tract sold below the dam was to a man by the name of Waynant, for the purpose of erecting an oil mill; the next was sold to John V. Coon, for a gypsum mill; and the next tract of ground is what the plaintiff claims is lot eleven; and the next was sold to a paper-mill company.   The foundation of the oil .mill was erected; the gypsum mill has also been erected, and has been in operation. All of these buildings are substantial structures, built with stone, and costing, with the sea-walls, many thousands of dollars.   What is claimed by the plaintiffs to be lot eleven, as they have described it in their petition by metes and bounds, does not interfere with the buildings either on the north or south.   On the first day of June, 1875, a new plat was filed by the town company, and on this plat the lines dividing said strip of land into lots between the lots and the county road, were obliterated.   There is no way now to determine from the recorded plat, either the first plat or the second plat, or from any measurement, exactly where lot eleven is or was, nor are there any monuments on the ground from which such boundaries can be ascertained with any degree of accuracy.   If resort be had to the. testimony of citizens or of any old residents of Blue Rapids as to their understanding of where lot eleven is, it lies between the gypsum-mill property and the paper-mill property, which is the ground described by the plaintiffs by metes and bounds as lot eleven, and was in the possession of the plaintiffs at the commencement of this action; and the court finds such to be the facts."

CONCLUSIONS OF LAW.

"As conclusions of law from the foregoing facts, the court finds that the plaintiffs are entitled to have their title quieted to said lot eleven as described by metes and bounds in their

petition, subject to the lien of Emir J. Coon for $27.15 by virtue of his tax deed, with interest at seven per cent. from date of judgment; and that plaintiffs should pay one-half the costs of this action, and that the other half should be paid by defendants W. H. Tucker and Herbert D. Stetson."

The court entered a decree quieting the title to the premises in controversy in *W. H. H. Freeman,* who had been substituted as plaintiff, against each of the defendants, except as to the tax lien of Emir J. Coon. H. D. Stetson and W. H. Tucker excepted to the rulings and decree of the court, and bring the case here for review.

*John A. Broughten,* and *John V. Coon,* for plaintiffs in error.

*W. H. H. Freeman,* defendant in error, for himself.

The opinion of the court was delivered by

JOHNSTON, J. : There are but two points urged here against the judgment rendered by the district court. The first of these arises upon rulings of the court in admitting in evidence the sheriff's deed, under which the defendant in error claims title, as well as the record of the preliminary proceedings upon which the deed was founded. Both parties claim title to the lot in controversy from the Blue Rapids Town Company. The sheriff's deed, which is admitted to be regular in form and valid upon its face, was executed on December 26, 1878, in pursuance of an execution sale made to satisfy a judgment obtained by Jane F. Hathaway against the Blue Rapids Town Company. The plaintiffs in error claim title to the lot through a conveyance made by the Blue Rapids Town Company subsequently to the sale and conveyance by the sheriff, and on December 13, 1879. The judgment in favor of Jane F. Hathaway was obtained on March 28, 1877, and after two executions had been issued upon the judgment and returned unsatisfied, a third was issued and levied upon the lot in controversy as the property of the Blue Rapids Town Company. It is admitted that the lot was duly ap-

praised and offered for sale, and the amended return of the sheriff is that it was sold to Jane F. Hathaway for a sum greater than two-thirds of the appraised value, she being the highest and best bidder therefor. The validity of the judgment and execution and the regularity of the sale and prior proceedings are not questioned, and it is further conceded that immediately prior to the sale and conveyance of the lot, the title to the same was in the Blue Rapids Town Company. The objection to the sheriff's deed is based upon the returns made by the sheriff upon the execution. It seems that W. H. H. Freeman was the attorney of Jane F. Hathaway, and was present at the sale and made a bid upon the property, as he claims, for and in the name of his client. In the return first made by the sheriff it was stated that the lot was sold to Freeman, who refused to pay the amount of his bid, and on the 15th day of November, 1878, the execution was returned unsatisfied. At the next term of court, which convened in the month of December following, Jane F. Hathaway moved the court to require the sheriff to correct his return so as to show that the property was sold to her instead of to her attorney, and that the sheriff be required to accept the sum of $146.85, which was the amount of the bid in excess of her judgment. This motion was allowed, and the amendment was made by the sheriff, as hereinbefore stated. The plaintiffs in error say that the first return was conclusive, and when filed could not be amended or corrected. This is a mistaken position. The return of the officer upon the execution is only a history of the steps taken by him in obedience to its command. It is the duty of the court to protect its process, and as the return is the evidence of what was done by the officer under the execution, and upon which the rights of the parties and the liability of the officer depend, it is important that the facts therein should be correctly stated; and if they are not, it is the duty of the court upon proper application, to permit the officer to amend his return conformably to the facts. Before the return is finally filed, it may be amended by the officer without leave; but when it has been filed and made a record of the court, it

34 — 35 KAS.

can only be changed or amended with the permission of the court. The court does not make the amendment nor change the facts, but only allows the return to be made so as to correctly evidence the facts.

The objection is made that the officer resisted the motion to amend his return, and was by the court compelled to make the amendment. What the action of the court was, can only be learned from the record of the proceedings on the motion to amend, and the amended return which was made. From these the most that is shown is, that the motion was made to amend by Jane F. Hathaway, the plaintiff in the action and purchaser of the property, who appeared by her attorney, while the sheriff appeared by his attorney, who was one of the attorneys of record for the Blue Rapids Town Company. The amendment could be made upon the application of the plaintiff or the purchaser of the property, as well as upon the application of the officer himself. For aught that appears, the application may have been made by the plaintiff upon the suggestion or request of the sheriff. At first he may have thought that the bidder must be personally present, and that Freeman, who was the agent and attorney of the plaintiff, could not bid in her name, and accordingly made the return that the lot was struck off to Freeman; or he may have misunderstood the bidder, and after investigation of the facts before the court upon the motion to amend, become satisfied that the bid was made for the plaintiff instead of for Freeman; but be that as it may, it does not appear that there was any compulsion, nor that the court dictated in any manner what should constitute the return. And even if the sheriff at first resisted the application, it will make no difference, as it appears that the return was subsequently amended by him and not by the court, and that it was made after an inquiry into the facts which presumably satisfied him that the bid was made for, and the sale made to, Jane F. Hathaway, as stated in the amended return.

It is also objected that the amendment was made without notice to the Blue Rapids Town Company, or to the plaintiffs

in error. By some of the courts it is held that the return may be amended as a matter of course, and that no notice is necessary. In *Rickards v. Ladd*, 6 Sawyer, 40, the court, in determining the authority of an officer to amend his return, says:

"Strictly speaking, then, the proceeding is one between the officer and the court. It is *ex parte* in its very nature; and no one has an absolute right to a notice of it. In contemplation of law the amended return is made under the same sanction and responsibility as the mistaken one. In effect it becomes the return of the case, and cannot be questioned collaterally by the parties to the action, or those claiming under them as privies." (*Morris v. Trustee*, 15 Ill. 269; *Dun v. Rodgers*, 43 id. 260; *Wright's Appeal*, 25 Pa. 373; *Kitchen v. Reinsky*, 42 Mo. 427.)

There are cases holding that notice of the application to amend a return is necessary, where a long time has elapsed after the original return has been made, or the term to which the process is returnable has passed and the case has been stricken from the docket, or where a return has been made upon an execution which shows that it is satisfied and the amendment would have the effect of restoring the liability of the defendant. (*Coopwood v. Morgan*, 34 Miss. 368; *Thatcher v. Miller*, 13 Mass. 271; *Hovey v. Wait*, 17 Pick. 197; *O'Connor v. Wilson*, 57 Ill. 226; *Williams v. Doe*, 9 Miss. 559; Freeman on Executions, § 358.)

It may generally be said that applications to amend returns are addressed to the sound discretion of the court, and are only to be allowed in furtherance of justice. If much time has elapsed since the first return, or if new rights have likely intervened, it is necessary and proper that notice to those interested should be given; but it will be seen that this amendment was made at the succeeding term of court, and within a few days after the original return was filed. The amendment was made at the same term, but before the confirmation of the sale was made.

1. Sheriff's sale; amendment of return; notice; practice.

The parties are deemed to be in court until the sale is confirmed so that no notice is necessary of a motion to

confirm the sale; and it would seem that the application to amend the return of the execution sale might be made before the confirmation of the sale without a new or additional notice. In any event, the plaintiffs in error are not entitled to notice. At the time the amendment was made, they had no interest whatever in the proceedings under the execution, or in the property sold. The Blue Rapids Town Company is not complaining of the want of notice, and the plaintiffs in error cannot complain for them. They did not purchase the lot on the faith of the original return, and could not have been misled by it. When they attempted to purchase the property the amended return had been made and filed, and therefore no notice to them of the application to amend was necessary. (*Baker v. Binninger*, 14 N. Y. 270.) We may rest this decision, however, upon another and the broad ground, that the judgment and execution being confessedly valid, the sheriff's deed cannot be attacked, nor the proceedings impeached by strangers, nor by anyone in this collateral action. (Freeman on Executions, §§ 334, 339, 364, 365; Rorer on Judicial Sales, §§ 479, 480, 789, 1059; Herman on Executions, §§ 248, 249, 301, 326, p. 402; *Rounsaville v. Hazen*, 33 Kas. 76; *Dickens v. Crane*, 33 id. 344; *Cross v. Knox*, 32 id. 725; *Pritchard v. Madren*, 31 id. 38.)

The second point urged by the plaintiffs in error is, that the testimony does not support the finding of the court that the land conveyed by the sheriff's deed is the same as that described in the petition. In the sheriff's deed, under which Freeman claims, the land is described as lot eleven on the county road. The same description was given in the petition, but it was further described by metes and bounds. It appears that the Big Blue river runs through the city of Blue Rapids, and that having been dammed there, it affords a water power which has been largely utilized to propel machinery in mills and manufacturing establishments that have been constructed at that place. There was an irregular strip of land lying near to the dam and between what was called the county-road and the river, which was laid out by the town company

as water-power lots, and designated by number, and as county road lots, among which is the lot in controversy. The plat embracing the water-power lots was regularly made and filed, but no monuments are to be found of the survey then made. The testimony in the record does not show very satisfactorily the identity and boundary of the water-power lots, but we deem it sufficient to sustain the conclusion reached by the court. The plaintiffs in error claim that a certain half-section line was the base line or initial point from which these lots were measured and surveyed, but there is little in the testimony to support this claim. On the other hand, the defendant in error claims that the lots were surveyed and measured from a point near the dam and bridge over the same. It appears that the tract first sold was for an oil mill, and was immediately below the dam, and is claimed to be upon lot thirteen. The adjoining tract, or what is claimed to be lot twelve, was next sold for a gypsum mill. The tract next sold was for a paper mill, and is on what was claimed to be lot ten. Upon each of these lots so sold large and substantial buildings have been erected. It is claimed that lot eleven lies between the gypsum mill and the paper mill. Upon what is called lot eleven, and immediately north of the gypsum mill, there is a water wheel, and it appears that the Blue Rapids Town Company, while it yet owned the ground, entered into an agreement with Price Bros., who owned a foundry and machine shop on the opposite side of the county road, giving them the right to use the water wheel above mentioned, and the machinery connected therewith, and in that agreement the land upon which the wheel was located was described as lot eleven. A witness named Loban, who had resided in Blue Rapids for thirteen years, testified that he was called as an appraiser to appraise the land upon which the execution was levied, and that the land between the gypsum mill and the paper mill was appraised as lot eleven. One D. Fairbanks, an old resident of the city, testified that he was familiar with the water-power lots, and that he was present and assisted in making a survey of them. It does not appear that this was the original survey,

but it does appear that it was made for the purpose of locating the water-power lots where the oil, gypsum and paper mills were located, and that monuments were then placed at the corner of their premises. Upon inquiry, the witness stated that the ground lying between the mills was understood to be and was called lot eleven. This testimony was objected to as incompetent, and its admission is assigned for error. The court found that there was no way to determine from the recorded plat or from any measurement, exactly where lot eleven is or was, and that there were no monuments on the ground from which its boundaries could be ascertained with any degree of accuracy. In view of this condition of the case,

2. General reputation as evidence to prove boundaries.

and in absence of evidence of a higher and better nature, we think that the testimony was admissible. It will be observed that the boundaries are public ones, which it is generally conceded may, in cases of necessity, be established by hearsay and reputation. In *Boardman v. Lessees of Reed & Ford*, 6 Pet. 328, the supreme court of the United States, in passing upon the admissibility of that class of testimony, stated:

"That boundaries may be proved by hearsay testimony, is a rule well settled, and the necessity and propriety of which is not now questioned. . . . Landmarks are frequently formed of perishable materials, which pass away with the generation in which they are made; by the improvement of the country and from other causes they are often destroyed; and it is therefore important in many cases that hearsay and reputation should be received to establish ancient boundaries."

In *Kinney v. Farnsworth*, 17 Conn. 355, it was decided that —

"Within whatever limits the rule of evidence as to the admissibility of reputation on the questions of boundary is restricted elsewhere, it is well settled in this state that general reputation is admissible for the purpose of showing not only public boundaries, and such as those between towns, societies, parishes, and other public territorial divisions, but also the boundaries of lands of individual proprietors."

In support of the same view, see also *Harriman v. Brown*,

8 Leigh, 697; *Ralston v. Miller*, 3 Rand. 44; *Cox v. The State*, 41 Tex. 1; *Conn v. Penn*, 1 Pet. C. C. Rep., 496.

Under these authorities the admission of this testimony was not error. While the testimony upon the identity and boundaries of the lots is weak, we think it must be held sufficient to uphold the judgment of the district court, which will be affirmed.

All the Justices concurring.