No. 23,430.

F. B. HAZELWOOD, *Appellee,* v. P. H. SUITER et al. (GEO. W. JENKINS, *Appellant.*)

SYLLABUS BY THE COURT.

1. EXECUTION SALE—*Defective Notice of Sale—Purchaser Chargeable with Notice of Defect—Conversion.*  A husband who clerked for his wife in her store brought an action in her name, or managed one thus brought, and a judgment was recovered and certain grain levied on.  Instead of the required ten days' notice only nine days' notice was given before the sale, at which the husband bought the property.  In an action by him for conversion against the landlord on whose farm the grain was raised the defendant was prevented from attacking the validity of the sale, on the ground that the plaintiff was an innocent purchaser. *Held,* error.

2. CONVERSION—*Measure of Damages—Instructions.*  In an action in conversion involving a crop of growing grain the jury should be given the measure of damages and evidence should be required as to the cost of putting such crop in shape for market.

Hazelwood v. Jenkins.

Appeal from Gove district court; Isaac T. Purcell, judge. Opinion filed
April 8, 1922. Reversed.

J. H. Jenson, of Gove, Lee Monroe, Guy L. Hursh, and C. M. Monroe, all
of Topeka, for the appellant.

R. H. Thompson, of Gove, for the appellee.

The opinion of the court was delivered by

West, J.: The plaintiff, F. B. Hazelwood, sued the defendant and
P. H. Suiter for damages for the conversion of certain cane seed,
which he alleged he had purchased at constable's sale.

The defendant answered by general denial, and denied that he
was indebted to the plaintiff or to Suiter who had raised the cane
seed as the defendant's tenant.

The case was dismissed as to Suiter and the plaintiff recovered
against Jenkins, the verdict being for $200.

The defendant appeals and claims that the execution sale at
which the plaintiff was purchaser was held without sufficient notice
and therefore void; that the court erred in instructing the jury that
the validity of the sale could not be questioned by Jenkins because
he was not a party to the action in which the sale was had; also,
that the court gave the jury no measure of damages and there was
no evidence to support the verdict for the amount awarded by them.

Counsel concede that an entire stranger to a lawsuit who buys in
personal property at a judicial sale even when notice thereof was
for an insufficient length of time acquires a title which cannot be
questioned collaterally, but they argue that the plaintiff was not an
innocent purchaser at the constable's sale and therefore Jenkins has
a right to assert the insufficiency of the notice and the invalidity of
the plaintiff's title. The plaintiff has filed no brief.

It seems from an examination of the record that the plaintiff's
wife, M. E. Hazelwood, got a judgment against Suiter and wife in
justice's court for $164.99 and costs, and levied on a crop of cane
which Suiter had raised on defendant Jenkins' farm; that the levy
was made August 12, and the property was sold August 21, the
statute requiring the sale to be advertised ten days. (Gen. Stat.
1915, § 7848.) The plaintiff, F. B. Hazelwood, testified that he at-
tended the sale and purchased Suiter's undivided interest in the
cane; that the action was brought by his wife while she ran a store
at Gove City, and that he was in the store with her on a salary.

"I went with the sheriff when he attached the cane. I never took possession

of the horses I bought. I never took possession of the cane. I had my arrangement to cut it. . . .

"Q. Did you pay Mr. Cook [the sheriff] out there for this cane and these horses? A. I satisfied the account.

"Q. How did you satisfy it? A. I satisfied her claim.

"Q. How did you satisfy that? A. I paid for it with wages.

"Q. Who did you pay? A. Mrs. Hazelwood.

"It was the agreement when I bought it that I was to settle for it that day. I never paid any money to Mr. Cook. I had something to do with the filing of this suit of M. E. Hazelwood against P. A. Suiter. I knew it was filed . . . I started the suit for Mrs. Hazelwood. I had authority to start it. I think I paid the costs to the sheriff. I cannot say how much money I paid. I do not think Mr. Suiter owes myself or Mrs. Hazelwood anything at this time."

The defendant testified among other things that in August, 1918 (the month in which the levy was made), Suiter had an interest in the crop:

"He owed me $128.00 which he has not paid. He assisted in the harvesting of the crop. He made no objection as to the time or manner of cutting the crop. There was nothing left after the expenses were paid. . . . Our contract was that he was to receive one-third of the proceeds of the crop after the expenses were paid."

The court charged the jury that the validity of the former proceedings between the plaintiff and another party could not be complained of by one not a party to that action, and could not be collaterally attacked.

"In other words, if you find from the evidence that the plaintiff in this action purchased the property in controversy in this action at a Sheriff's sale based on an execution issued in a case in which the Defendant Jenkins was not a party then in such event you are instructed that Defendant Jenkins cannot in this present action attack the validity of the officers proceedings in the action in which such execution was levied."

No instructions were given touching the measure of damages unless it might be inferred from instruction No. 6:

"If you find for the plaintiff in this action you should deduct a reasonable compensation for the expense of cutting and harvesting the property and if you consider the testimony as to the market value of such property then in such event you should also deduct reasonable compensation for threshing and hauling."

There was testimony as to how many bushels an acre the crop averaged, and that kafir corn was worth $1.50 a bushel and sold at $1.50 a bushel for chicken feed. Counsel contend that the measure of damages was the value of the property at the time of the con-

Hazelwood v. Jenkins.

version and that there was a dispute as to what interest Suiter had in the crop and no denial that he owed Jenkins money, and no testimony whatever as to the necessary expense of harvesting and thrashing. In *Jenkins v. Kirtley*, 70 Kan. 801, 79 Pac. 671, where the damages were for the breach of a partnership contract, the jury were told that in fixing the amount it must be left to their discretion, and the instruction was considered faulty as it left the jury without guidance—

"But, beyond this, it contained a positive misdirection, in that it told them they could use their own ingenuity in the matter. Having undertaken to state a rule the court should have given one which was correct. The elements of damage open to consideration should have been enumerated and methods and criteria for. their estimation should have been pointed out." (p. 803.)

13 Cyc. 236 was cited, which holds that the rules by which damages are to be estimated should be laid down by the court, and " 'it is its duty to explain to the jury the basis on which the assessment should be made, the proper elements of the damages involved, and within what limits they may be estimated in the case involved.' " (p. 804.)

The general rule is that one who buys property at a judicial sale, even when the notice is insufficient, acquires a title which, though it might be voidable at the instance of an opposing claimant if the purchaser had been a party to the suit, is good in the hands of a stranger to the suit who purchased *bona fide.* (*Cross v. Knox,* 32 Kan. 725, 5 Pac. 32, and *Rounsaville v. Hazen,* 33 Kan. 71, 5 Pac. 422.) In the latter case it was said:

"It is also in evidence that Rounsaville had full knowledge of said judgment before the release was entered, and before he purchased the property from Noble; and that while he and Noble were negotiating with reference to the purchase and sale of the property, they procured an abstract of the title to the property which showed that the judgment was in fact a lien upon the property; and the evidence is undisputed that Hentig himself, during that very time, told Rounsaville that the judgment was a lien upon the property, and that, while he was willing to release the judgment, as Noble desired him to do, yet that he did not consider that anything he, Hentig, might do with reference to the matter, would be worth anything." (p. 75.)

3 Freeman on Executions, 3d ed., § 340:

"With respect to infirmities in the proceedings, the plaintiff and his attorney are less favored than strangers to the writ. Strangers are allowed and encouraged to rely upon the facts set forth in the record, and upon the presumption that all the officers of the law have in all respects performed their duties. But if notice of vices or infirmities in the proceedings is brought home

to strangers purchasing at execution sales, then such vices or infirmities may impair the title in the hands of such purchaser with notice; but it is incumbent on the plaintiff and his attorney to keep informed of all the proceedings taken in the case under their direction, or by virtue of their authority. The law will not permit them to be ignorant of such proceedings."

Freeman on Void Judicial Sales, 4th ed., § 48:

"A purchaser's claim to relief is dependent upon his bid being made in the belief that the sale was of a perfect title. If he knew of the defect, or from pursuing inquiries suggested by the pleadings or notice of sale would have known of it, he is not entitled to be released." (p. 164.)

Herman on Executions, § 328:

"An execution-creditor who bids off the property at a sale on his own execution, and applies the bid on his judgment, is not regarded as a *bona fide* or innocent purchaser; . . . The law presumes that he has notice of every fact and step in the proceeding, from the commencement of the action until after the completion of the proceedings under execution, and the creditor is bound to know that all the proceedings are legal up to the sale . . . a plaintiff who bids on the property in the name of another, but applies the amount due on his judgment in payment of his bid, and is himself the real purchaser, the person in whose name the property is purchased is not an innocent purchaser." (pp. 487-489.)

"The courts are divided upon the question as to whether the judgment creditor who purchases at his own sale is affected by irregularities, liens, and equities of which he had no actual notice. According to the doctrine prevailing in the majority of jurisdictions he is not an innocent purchaser, but is chargeable with notice of all irregularities in the judgment, execution, and sale, and of all liens upon, and equities subsisting against the property in the hands of the judgment debtor." (23 C. J. 764.)

Under the plaintiff's own testimony the execution sale was in a case engineered if not brought by himself in the name of his wife. He did not even take the pains to satisfy the judgment or have her satisfy it. He simply made some arrangement with her, he says, by which his wages due himself from her went to offset the matter. He satisfied her claim. He "paid for it with wages." The sheriff testified that Mr. Hazelwood paid the costs but "paid no cash on the judgment." So, to all intents and purposes the suit was the plaintiff's suit and he bought with the same knowledge and responsibility as if he had been the nominal as well as the practical plaintiff in the action. In such capacity he levied on the grain claimed by the defendant, and at a sale after only nine days' notice he bought it. Under all logic and authority he was not an innocent purchaser, and the defendant's attack on the validity of the sale was not collateral as against him.

The jury should have been given the basis of damages and there should have been evidence as to value and also as to the cost of putting the crop in condition for market. ·

The judgment is reversed and the cause remanded for further proceedings in accordance herewith.

MASON, J. (concurring specially) :   The instruction to the effect that Jenkins, because a stranger to the action in which the execution was issued, could not successfully attack the validity of the sale made thereon because of the defective notice appears to me to be correct, unless Jenkins can be said to be in privity with the execution defendant.   (10 R. C. L. 1294; 44 Am. Dec. 240; 2 Freeman on Executions, § 286; 23 C. J. 642, § 601.)   I do not see that the fact that F. B. Hazelwood was not an innocent purchaser affects the matter.   However, as the appellee has not attempted to defend his judgment in this court, no extended discussion seems called for.